44

RICHARD S. POLLIO *v.* PLANNING COMMISSION OF
THE TOWN OF SOMERS ET AL.
(15008)

CALLAHAN, BORDEN, BERDON, NORCOTT and PALMER, Js.

Argued November 3, 1994—decision released January 31, 1995

*Thomas W. Fahey, Jr.*, with whom, on the brief, was
*Carl T. Landolina,* for the appellants-appellees
(defendants).

*Ronald P. Sherlock,* for the appellee-appellant
(plaintiff).

BERDON, J. The dispositive issue raised by this appeal[1] is whether a municipality is authorized pursuant to General Statutes (Rev. to 1989) § 8-1c[2] to establish and collect reasonable fees to cover the costs of engineering review of construction plans and inspection of subdivision improvements during construction in connection with an application for a subdivision. We conclude that § 8-1c authorizes such fees, and reverse the judgment of the trial court.

In 1989, the defendant town of Somers (town)[3] enacted an ordinance pursuant to § 8-1c to establish a base application fee of $250 and additional fee schedules "to cover engineering review of construction plans and inspection of improvements during construction." Somers Town Ords., "Ordinance Establishing Fees for Subdivision Applications" (1989) (1989 ordinance).[4] In

---

[1] The defendants appealed from the judgment of the trial court to the Appellate Court, and this court transferred the appeal to itself pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] General Statutes (Rev. to 1989) § 8-1c provides: "FEES FOR MUNICIPAL LAND USE APPLICATIONS. Any municipality may, by ordinance, establish a schedule of reasonable fees for the processing of applications by a municipal zoning commission, planning commission, combined planning and zoning commission, zoning board of appeals or inland wetlands commission. Such schedule shall supersede any specific fees set forth in the general statutes or any special act."

[3] The defendants in this case are the town of Somers and the planning commission of the town of Somers.

[4] The 1989 ordinance provides in pertinent part: "ORDINANCE ESTABLISHING FEES FOR SUBDIVISION APPLICATIONS

"BE IT ORDAINED THAT:

"Section 1: AUTHORIZATION AND PURPOSES

"1.1 To establish a schedule of fees, pursuant to Section 8-1c of the Connecticut General Statutes, which requires new Subdivision applications to fund the approximate actual municipal administrative costs of reviewing, evaluating and processing such applications, and ensures that fees do not cause such applications to subsidize municipal expenses which are not related to reviewing, evaluating and processing such applications. . . .

"Section 2: DEFINITIONS . . . .

"2.2 Review, Evaluation and Processing—Review, evaluation and processing is to include all functions performed in connection with, or association

February, 1990, the plaintiff, Richard S.Pollio, submitted an application for the approval of a 115 lot subdivision to the defendant planning commission of the town of Somers (commission). At that time, the plaintiff paid the town, pursuant to the 1989 ordinance, $36,030, consisting of a $250 base application fee and

with . . . a Subdivision application, by the Planning Commission, and any other Department of the Town of Somers or any Consultant hired by the Town to review, evaluate or process Subdivision applications. . . .

"Section 3: FEES CHARGED FOR SUBDIVISION APPLICATIONS

"3.1 The subdivision applicant shall pay a base application fee of Two Hundred and Fifty ($250.00) Dollars which is intended to cover a portion of the Town's costs for processing and administrative handling of a Subdivision application, including, but not limited to: legal advertisements regarding hearings, decisions of the Commission and other matters requiring publication in a newspaper; recording and transcribing public hearings and minutes of Commission meetings relative to the application; staff salaries and overhead expenses for the Town Planner, Town Sanitarian and other Town Officials, and Consultant expenses in direct connection with the technical and regulatory review; and Town Attorney fees in direct connection with legal advice and review of documents directly related to the Subdivision. To this base Subdivision application fee shall be added the following surcharges and fees to cover engineering review of construction plans and inspection of improvements during construction:

"3.1-1 A surcharge of Eighty-Five ($85.00) Dollars for every one hundred . . . feet, or part thereof, of new roadway proposed to be constructed as part of the subdivision and intended to be deeded to the Town as public right-of-way;

"3.1-2 A surcharge of Fifty-Five ($55.00) dollars for every one hundred . . . feet, or part thereof, of existing or previously approved public rights-of-way for town or state roadways abutted by the boundaries of the land contained in the proposed Subdivision;

"3.1-3 A Subdivision lot fee of One Hundred Fifty ($150.00) Dollars for each of the first Twenty . . . lots; One Hundred Twenty-Five ($125.00) Dollars for each of the twenty-first through the fiftieth . . . lots; One Hundred ($100.00) Dollars for each of the fifty-first through the hundredth lots . . . and Seventy-Five ($75.00) Dollars for each new lot over one hundred . . . lots to be created by the subdivision filed with the Planning Commission;

"3.1-4 An inspection fee of Fifty ($50.00) Dollars per lot to cover a portion of the Town's cost of inspections and administrative actions to insure compliance with approved plans for sedimentation and erosion control measures in connection with the approved Subdivision application.

"3.2 All applicable fees and surcharges must be paid in full at the time the Subdivision application is filed with the Planning Commission."

supplemental fees of $35,780 to cover engineering review of construction plans and inspection of improvements during construction. On October 11, 1990, the commission denied the plaintiff's application without prejudice,[5] primarily because the plaintiff had failed to provide all the required information and because the proposed sanitary disposal methods were unsuitable. Instead of resubmitting the application, the plaintiff appealed from the commission's denial to the Superior Court.[6]

The plaintiff also demanded that the town return the $35,780 that he had paid for the review and inspection of the proposed subdivision pursuant to the 1989 ordinance. When the town refused to return the fees, the plaintiff brought this action seeking, among other things, a return of the subdivision fees that he had paid in the amount of $35,780.[7]

The trial court concluded that § 8-1c did not authorize the town to charge application fees for engineering review of construction plans, and that when the

---

[5] Under the town ordinances, an application that is denied without prejudice may be resubmitted at no extra cost to the developer.

[6] The commission's decision to deny the application was ultimately upheld on appeal. *Pollio* v. *Conservation Commission*, 32 Conn. App. 109, 628 A.2d 20 (1993).

[7] The plaintiff also sought a declaratory judgment that the 1989 ordinance is invalid because it is not authorized by § 8-1c. The trial court refused to consider the declaratory judgment because it found that the case of *Avonside, Inc.* v. *Zoning & Planning Commission*, 153 Conn. 232, 215 A.2d 409 (1965), prohibited the use of declaratory judgment when the fees are paid under protest and monetary damages are the appropriate remedy. Instead, it construed the plaintiff's prayer for relief claiming the return of the fees paid as a claim for monetary damages. We do the same.

Upon the defendants' appeal of the trial court's decision, the plaintiff filed a cross appeal claiming that the trial court incorrectly refused to render a judgment declaring the 1989 ordinance to be invalid. Because of our judgment in this appeal, we need not address the issue of whether the trial court correctly determined that monetary damages, not declaratory judgment, is the proper remedy in this case.

legislature intended to authorize fees for inspection during construction, it enacted General Statutes § 8-26 to provide explicitly for such fees. This appeal followed.

At trial, the plaintiff argued that although § 8-1c authorizes a municipality to collect, by ordinance, reasonable fees for the basic administrative *processing* of subdivision applications, that statute does not extend to the collection of fees for engineering review of construction plans or inspection of improvements during construction. According to the plaintiff's interpretation of § 8-1c, the statute authorizes the town to charge only the base application fee of $250 described in § 3.1 of the 1989 ordinance for the processing and administrative handling of subdivision applications. The additional fees to cover engineering review of construction plans and inspection during construction that are detailed in §§ 3.1-1 through 3.1-4 of the 1989 ordinance, according to the plaintiff, are not processing fees. Therefore, the plaintiff argued that the town exceeded the statutory authority granted it by the legislature pursuant to § 8-1c upon which the 1989 ordinance was based. The plaintiff claimed that fees charged in addition to those authorized by § 8-1c can be collected only pursuant to § 8-26,[8] which specifically grants planning commissions authority to charge application fees for the inspection of subdivision improvements, as well as processing applications, without enacting an ordinance. Fees charged under § 8-26 were, at the time of the enactment of the 1989 ordinance, subject to the statu-

---

[8] General Statutes (Rev. to 1989) § 8-26 provides in pertinent part: "APPROVAL OF SUBDIVISION AND RESUBDIVISION PLANS. WAIVER OF CERTAIN REGULATION REQUIREMENTS. APPLICATIONS INVOLVING INLAND WETLANDS AND WATERCOURSES. All plans for subdivisions . . . shall be submitted to the commission with an application . . . . The commission may charge fees for the processing of subdivision applications and inspection of subdivision improvements, the minimum fee to be fifty dollars for each application and the maximum to be twenty-five dollars for each lot within the planned subdivision."

tory limitations of a minimum of $50 for each application and a maximum of $25 for each lot. The plaintiff argued, however, that because the ordinance was enacted pursuant to § 8-1c, the town could collect only the $250 base application *processing* fee authorized by the ordinance pursuant to the statute. We disagree.

We note at the outset that a presumption of validity is accorded to municipal ordinances. " 'Every intendment is to be made in favor of the validity of the ordinance, and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt.' " *Aaron* v. *Conservation Commission*, 183 Conn. 532, 537, 441 A.2d 30 (1981), quoting *Connecticut Theatrical Corp.* v. *New Britain*, 147 Conn. 546, 553, 163 A.2d 548 (1960). The burden of proving the ordinance is invalid rests upon the party asserting its invalidity; *Aaron* v. *Conservation Commission,* supra, 537; and in this case, the burden is on the plaintiff.

Fees charged under the 1989 ordinance are imposed for three purposes. The first type of fee requires the payment of $250 as a base application fee for "processing and administrative handling . . . including . . . Consultant expenses in direct connection with the technical . . . review." 1989 ordinance, supra, § 3.1. It is undisputed that this fee and the costs it is intended to cover are authorized by § 8-1c.

The second type of fee imposed under the 1989 ordinance is for surcharges and supplemental fees for engineering review of construction plans. 1989 ordinance, supra, § 3.1. Because the technical review of subdivision construction plans must be made by engineers who are employed by the town as consultants, these costs are not distinguishable in kind from the "Consultant expenses in direct connection with the technical . . . review" that are included as part of the undisputed base

application fee under § 3.1 of the ordinance and are part of the costs of processing the application pursuant to § 8-1c. The fees authorized by the ordinance for this specific type of engineering review merely allow for an incremental increase in the amounts collected by the town for the additional costs associated with the size of the subdivision involved. Furthermore, a detailed subdivision plan must be submitted before a subdivision application may be approved. It is clear that part of the processing of the application for subdivision approval requires that an engineer review those plans. Therefore, we conclude that, according to the plain meaning of the statute, preapproval engineering review of plans associated with subdivision applications is part of the cost of processing such applications and is authorized under § 8-1c. The only limitation is that the fees must be reasonable.

The third type of fee, $50 for each proposed subdivision lot, is intended to cover a portion of the costs of the inspection of improvements during construction. 1989 ordinance, supra, § 3.1. The plaintiff maintains that the authorization of fees for processing the applications is not included in § 8-1c. We conclude, however, that the plaintiff has not sustained his burden to rebut the presumption of its validity.

We begin our analysis of the inspection fee by defining the intended scope of the application processing fees authorized under § 8-1c. Although we must first look to the language of the statute to determine legislative intent, if the meaning is not evident, we may employ additional sources of statutory construction. *Connecticut Bank & Trust Co.* v. *Winters*, 225 Conn. 146, 157–58, 622 A.2d 536 (1993). The phrase "fees for the processing of applications" is susceptible to several different constructions. Processing could refer only to the administrative handling of the application, as the plaintiff urges. It could also refer to the extensive

review to which an application is subjected prior to its approval or disapproval. For example, the plaintiff's application was accompanied by a five page checklist of preapproval requirements that included testing, site review and inspection. Another reasonable interpretation of the statute would be that, in addition to the cost involved in approving or denying the application, upon approval a continuing process of municipal involvement commences. Because the town must insure that the developer complies with the approved plans, it continues to incur postapproval inspection costs and the legislature may have intended to authorize municipalities to cover these costs, at least in part, in the application fee authorized by § 8-1c. Because the statutory language is subject to more than one plausible interpretation, we look to well settled principles of statutory construction to illuminate the intended scope of the statute. *Mercado* v. *Commissioner of Income Maintenance*, 222 Conn. 69, 74, 607 A.2d 1142 (1992) ("When the language of a statute is reasonably subject to diverse interpretations . . . we look to the statute's legislative history and the policy it was designed to implement 'to ascertain and give effect to the apparent intent of the legislature.' *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 755, 601 A.2d 1005 [1992]").

Section 8-1c was enacted in 1982 for the purpose of granting municipalities the authority to establish fee schedules by ordinance for the processing of various land use applications including those processed by planning commissions. The purpose of the legislation was explained by Representative Alice V. Meyer: "After extensive study and discussions with many of the local municipalities, we find that without benefit of state statute many of the local communities have been setting various fees for the processing of all kinds of applications. . . . What this bill does is strongly support local ability to do what the town feels is in the best inter-

est of that town. It gives the local community the right by ordinance to set what these fees are. And I think all of the Representatives who are concerned that these fees will be too high should realize that these fees will have to be voted upon by their own people within their own community. So that this is not something that is going to be imposed upon the people of the towns. They are going to have to pass the ordinances and agree to them before these fees can be collected." 25 H.R. Proc., Pt. 6, 1982 Sess., pp. 1819–20. It is apparent that the purpose of the statute is to empower municipalities to do what they consider to be in their best interests in order to cover the costs associated with land use regulation subject only to reasonableness. Section 8-1c includes a number of land use commissions and, therefore, various land use applications that implicate diverse and nonuniform processing costs. By referring to such fees generally as "fees for the processing of applications," the legislature simply chose not to attempt to specify all of them. Accordingly, we interpret the phrase "processing of applications" to include the diversified procedures of the several commissions that could involve both preapproval and postapproval costs associated with the application.

Any alternative interpretation would be contrary to the clearly expressed intent of the legislature. When construing a statute we must search for an effective construction that reasonably accords with the legislature's underlying intent. *Bartholomew* v. *Schweizer*, 217 Conn. 671, 675–76, 587 A.2d 1014 (1991). "We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Internal quotation marks omitted.) *Jones* v. *Mansfield Training School*, 220 Conn. 721, 726, 601 A.2d 507 (1992); *Peck* v. *Jacquemin*, 196 Conn. 53, 63–64, 491 A.2d 1043 (1985). Considering that the legislative purpose of § 8-1c was

to enable municipalities to enact ordinances so as to collect sufficient fees to cover the costs associated with land use regulations, it would be inconsistent with this intent to interpret § 8-1c to authorize the collection of fees to cover only the administrative costs of processing applications, because the most costly aspects of subdivision development for a municipality involve technical evaluation and inspection.[9]

To further define the scope of § 8-1c, we look to the legislative history of § 8-26, which specifically provides for application fees for the inspection of subdivision improvements. "Because the legislature is always presumed to have created a harmonious and consistent body of law, the proper construction of any statute must take into account the mandates of related statutes governing the same general subject matter." *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 575, 522 A.2d 763 (1987).

Originally enacted in 1947, § 8-26 was first amended in 1959 to authorize planning commissions to charge limited fees for "the processing of subdivision applications and inspection of subdivision improvements." Public Acts 1959, No. 679, § 6. The statute was subsequently amended several more times to increase the authorized minimum and maximum fees. See Public Acts 1963, No. 55, § 2; Public Acts 1975, No. 75-40; Public Acts 1978, No. 78-243. The General Assembly

---

[9] The plaintiff argues that this result is illogical because if a subdivision application is denied, as it was in his case, fees are collected in excess of costs incurred. We are not persuaded. First, the plaintiff was free to resubmit his application at no extra cost. He chose not to do so. Second, regardless of whether an application is approved or denied, the approval process is costly. The evaluation of the plaintiff's incomplete application cost the commission $22,423. It is not unreasonable to require the developer to conform his or her subdivision application and plan to the town's requirements and bear the financial burden if the application is not approved. Furthermore, the issue of the reasonableness of the fee is not before us. See footnote 11.

expressed concern that the municipalities were spending more on the approval process than they could collect under the statute. Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1975 Sess., pp. 58–59, remarks of Representative Raymond C. Ferrari. Legislation to increase the authorized fees was enacted to "enable the towns to more nearly meet their actual cost involved in subdivision processing and inspection." 18 H.R. Proc., Pt. 3, 1975 Sess., p. 1112, remarks of Representative Dorothy S. McCluskey. It is apparent that the purpose of § 8-26 is to enable planning commissions to cover the costs incurred during the evaluation of subdivision applications and the subsequent inspections required to assure compliance. The legislature was obviously concerned that the towns and, therefore, the taxpayers, were bearing a disproportionate burden of the costs of subdivision regulation. As previously indicated, the legislative history of § 8-1c demonstrates an identical concern pertaining to the several land use commissions and numerous application processes.

In 1993, the legislature again amended § 8-26 by authorizing planning commissions to charge sufficient fees to cover "the cost for the processing of subdivision applications, including, but not limited to, the cost of . . . the inspection of subdivision improvements."[10] Public Acts 1993, No. 93-124, § 1 (P.A. 93-124). That act also provides that any specific fees established by a planning commission under § 8-26 are superseded by a fee schedule enacted by ordinance under § 8-1c. There-

---

[10] The legislature amended § 8-26 to allow planning commissions to "establish a schedule of fees and charge such fees . . . sufficient to cover the cost for the processing of subdivision applications, including but not limited to, the cost of registered or certified mailings, the publication of notices and for the inspection of subdivision improvements. Any schedule of fees established under this section shall be superseded by fees established by ordinance under section 8-1c." Public Acts 1993, No. 93-124, § 1. Section 8-1c was also amended by Public Act 93-124, § 2, to clarify that any ordinance enacted thereunder superseded an enactment under § 8-26.

fore, the amendment clearly defined in pertinent part "the cost for the processing of subdivision applications" to include "the inspection of subdivision improvements," and specifically amended §§ 8-1c and 8-26 by providing that an enactment under § 8-1c supersedes any prior enactment under § 8-26.

We presume that laws are enacted in view of existing relevant statutes and that the legislature intended them to be read together so as to constitute one consistent body of law. *Dept. of Administrative Services* v. *Employees' Review Board*, 226 Conn. 670, 679, 628 A.2d 957 (1993). If there are two possible interpretations of a statute, this court must adopt the more reasonable construction. *Jones* v. *Mansfield Training School*, supra, 220 Conn. 726. There is no indication that the processing of land use applications under § 8-1c is intended to have a narrower meaning than the same terminology under § 8-26. On the contrary, because § 8-1c pertains to numerous land use commissions, and therefore to a number of different application processing requirements, the meaning implicitly has a broader scope. Accordingly, we conclude that to the extent that the fees for the processing of applications authorized under § 8-1c pertain to subdivisions, they are intended to cover at least the equivalent costs that may be covered under § 8-26.

Although P.A. 93-124 was enacted subsequent to the adoption of the 1989 ordinance, the purpose of the act was to clarify the prior law, and is therefore applicable to the 1989 ordinance. The act was introduced as a technical amendment to the statutes. 36 H.R. Proc., Pt. 5, 1993 Sess., pp. 1861–62. Technical amendments are not generally intended to effect substantive changes in the law. See *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 390, 393–94, 618 A.2d 1340 (1993) (technical amendment to act clarifies legislative intent and removes ambiguity); *Thomas*

*E. Golden Realty Co.* v. *Society for Savings*, 31 Conn. App. 575, 579 n.2, 626 A.2d 788 (1993) (technical amendment was designed to clarify statute and make it consistent with existing interpretations of act). Furthermore, "[w]e have recognized that a subsequent amendment to an existing statute may clarify the legislature's original intent." *Daly* v. *DelPonte*, 225 Conn. 499, 511, 624 A.2d 876 (1993); *Kinney* v. *State*, 213 Conn. 54, 66, 566 A.2d 670 (1989). We therefore construe P.A. 93-124 as a clarification of the legislative intent to grant planning commissions authorization to cover the costs associated with subdivision application evaluations, including the costs of post-approval inspections of improvements during construction. Because we interpret the processing of land use applications under both §§ 8-1c and 8-26 to be of at least equal scope, the technical amendment enacted by P.A. 93-124 is dispositive of our determination that the town is authorized to collect fees for construction inspections pursuant to § 8-1c.

We conclude that the town has broad authority under § 8-1c to define subdivision application processing fees by ordinance subject only to the standard of reasonableness.[11] The fees charged according to the schedule adopted in the town's 1989 ordinance are within the scope of § 8-1c.

The judgment of the trial court is reversed, and the case is remanded with direction to render judgment for the defendants.

In this opinion the other justices concurred.

---

[11] The trial court found the fees charged by the town were reasonable because the ordinance in the aggregate would recover only 80 to 85 percent of the town's direct costs. This finding has not been challenged and is, therefore, not before this court.