MEMORANDUM OF DECISION RE MOTION FOR APPROPRIATE RELIEF
The guardian ad litem in this case, on behalf of counsel for the mother, on June 26, 1998 filed a motion requesting the payment of fair and reasonable fees to counsel for the respondent mother, alleging in the memorandum of law in support of the motion inter alia, that the fees paid by the Judicial Branch for the representation of parties in the Superior Court for Juvenile Matters were not reasonable. Further, he claims that the unreasonableness of the fees may implicate the constitutional rights of the respondent mother in connection with the termination of parental rights petition pending against her.[2]
On June 30, 1998, the Commissioner filed a memorandum of law in opposition to the motion. The court denied the motion without hearing on June 30, 1998. On July 14, 1998, the guardian renewed his motion for the payment of fair and reasonable fees and also requested an articulation of the court's earlier denial. On the same date, counsel for the mother filed an identical motion and memorandum of law in support of the motion. On July 16, the Commissioner filed a renewed memorandum of law in opposition. The motions were assigned for argument and hearing on August 6, 1998, when all counsel appeared to argue these and other pending motions, as trial on the termination petition was to commence on August 10, 1998. At the hearing, the court informed the participants that the motions for articulation would be treated as motions to set aside the court's previous order and for reargument. The court also indicated that it would hear argument and take any testimony concerning the fees and fee arrangements. CT Page 14675
The hearing on the motion concerning attorney fees paid court-appointed counsel in juvenile matters cases began with counsel for the mother calling the guardian ad litem, who testified as to the fees paid counsel for the mother in this case pursuant to a panel appointment by the court. He testified that from time to time, since his appointment and the appointment of counsel for the mother, he and others so appointed receive an information packet from the Judicial Branch outlining the fee arrangement, the nature of the duties to be performed and the method by which statements must be rendered in order to receive payment. He testified that at present there is a sliding hourly rate starting at $50.00 an hour for the first hour for court appearances and a sliding blended scale with a cap of $182.00 a day. He testified that it was economically difficult to operate a private law practice, given these fees. His opinion was that the fees were reasonable for a Guardian as Litem, given the nature of his duties, but not reasonable or adequate for counsel for the parties and in particular the counsel for the mother in this matter, given the magnitude of the work required to adequately defend a party in a termination of parental rights case.
When questioned, he did admit that he had accepted the appointment and entered into a contract for the performance of the services on the conditions stated, as counsel for the mother had also done. He also testified that on occasion there were unilateral changes made to the fee arrangements, such as a change from billing in quarter hour increments to billing in six minute intervals. He also agreed that a year or so ago, there was a unilateral change to increase the rate for the first hour in court to $50.00. He stated that, as a young lawyer, he accepted such business as it was work to be performed, and admitted he was not bound to accept cases from the Superior Court for Juvenile Matters pursuant to the panel appointment, but could resign from the panel at any time, as could counsel for the mother. Counsel for the mother submitted no affidavits nor provided any other evidence to the court concerning the reasonableness of the fees paid.
The applicable statute, Connecticut General Statutes § 45a-717(b) states that:
If the respondent parent is unable to pay for his own counsel in the case of a superior court matter, the reasonable compensation of counsel appointed for the respondent parent . . . shall be established by, and paid for CT Page 14676 from funds appropriated to, the judicial department . . .
Appointment of counsel for indigent parties is also sanctioned by practice Book (Rev. 1998) 34-1(b), although no payment mechanism is established.
Thus the statute not only controls the appointment of counsel for indigent parents, but also mandates that "the reasonablecompensation to be paid shall be established"(emphasis added) by the Judicial Branch. This process is unlike many statutory schemes for the payment of counsel fees, which are individually reviewed and awarded in accordance with community standards by the court. Such fees are then typically paid by one party to the other.[3] However, given the fee structure and procedure utilized in compensating attorneys who are appointed to panels for the Superior Court for Juvenile Matters, the reasonableness of the compensation to be paid is determined by the Judicial Branch itself. The court does not set the fees, review the charges and order the payment of fees on a case by case basis, with the exception of authorizing the payment of expenses and payment for work in excess of twenty hours on an individual case, albeit at the established rate.
Counsel for the mother has not requested payment in excess of twenty hours, allowance of additional expenses or advanced any arguments that this matter is unusually complex or difficult and thus requires a different or enhanced payment structure. The gravamen of counsel's complaint appears to be that, because the fee schedule established by the Judicial Branch is not in accordance with market rates for the representation of clients with the private means to pay for such representation, that the amounts established by the Judicial Branch are unreasonable. While it is possible that an agency might establish a fee schedule which was per se unreasonable, this is not that case. It is hornbook law that there is a strong presumption in favor of the reasonableness of a governmental agency's action pursuant to express statutory authority as well as a presumption of the good faith in such action. In the context of zoning regulations, such regulation is entitled to the presumption of validity. Bauer v.Waste Management of Connecticut, Inc., 239 Conn. 515, 529686 A.2d 481, (1996). "(T)his presumption yields only when the party challenging the regulation established beyond a reasonable doubt that the regulation is invalid." Polito v. Planning Commission,232 Conn. 44, 49, 652 A.2d 1026 (1995). In the context of emergency regulations, the court found in Melton v. Rowe,
CT Page 1467742 Conn. Sup. 323, 328, 619 A.2d 483 (1992):
 On review, the standard "for deciding whether an agency's finding of an emergency . . . was warranted is whether there was a `substantial basis' for it. Further such a finding is given every presumption in its favor and is not subject to question in judicial proceedings unless palpably wrong," citing Robinson v. Secretary of Administration, 12 Mass. App. 441, 450, 425 N.E.2d 772 (1981).
The guardian ad litem conceded the fees were reasonable for his role, while only asserting that they were not reasonable as to counsel for the respondent mother, with no specific evidence as to why this is so. He referred to the cost of operating an office and the desirability of having computers and other equipment as well as appropriate staffing. There was no specific evidence as to the professional financial circumstances of counsel for the respondent mother. The guardian also cited the hourly rate paid by the Mashantucket Pequot Tribal Court for such matters as being $75 an hour. This rate is not so different as to require the conclusion that the fees set by the Judicial Branch are unreasonable, given the differences in the nature and frequency of the legal work available.[4]
Based on the foregoing, the court concludes from the evidence that counsel for the respondent mother has not met his heavy burden in overcoming the strong presumption in favor of the reasonableness of the fees set by the Department in accordance with the statutory mandate.
The court further notes that other states, in considering the compensation of court-appointed counsel in a variety of differing statutory frameworks, have even concluded that representation of indigent clients may be part of the bar's general pro bono function. In Division of Youth and Family Services v. D.C. and M.C.,571 A.2d 1295, 1303 (N.J. 1990), the court held, when there was no statutory basis for such payment, the claim for payment for attorneys appointed to represent indigent parents and their minor children in termination of parental rights cases failed on both equal protection and deprivation of property without due process grounds. The court concluded that this was a legislative determination and stated:
"It is to that body that a burdened bar, which devotes countless hours to a broad range of frequently unheralded pro bono endeavors must address and petition to relieve an CT Page 14678 apparent inequity" (p. 1303).
The South Carolina Supreme court has upheld the failure to compensate attorneys representing indigent defendants in criminal matters, declining to find constitutional violations on the same grounds and also determining that such uncompensated representation was not a violation of the Thirteenth Amendment prohibiting involuntary servitude. Roberts v. State of SouthCarolina, 456 S.E.2d 905 (S.C. 1995).
Under a statutory framework more closely approximating Connecticut's compensation method, a California court reviewed the recovery of fees by attorneys appointed to represent minors in various juvenile court proceedings. In Trask v. SuperiorCourt, 27 Cal.App.4th 346, 27 Cal.Rpt.2d 425, 427, 247 (Cal.App. 1994), the court stated that: .
. .to comply with its mandate to appoint counsel for indigent minors involved in delinquency proceedings, the Juvenile Division of the Los Angeles Superior Court maintains a panel of attorneys available for appointment. Although the juvenile court's policy statement explains that payment requests and supporting declarations will be monitored to prevent improper charges, the same policy statement represents, that for time properly spent, the attorneys will be paid $45 an hour for "both preparation and court time." Trask does not attack the juvenile court adoption of an hourly rate substantially below the customary rate charged by retained counsel, thereby recognizing, as do we, that an indigent minor's right to adequate representation must be tempered with a "judicious respect for the tax-paying public". (Emphasis in original).
In its decision, the court held that the failure to award the extra fees requested required explanation. In Recorders Court v.Wayne Circuit Court, 443 Mich. 110, 503 N.W.2d 886, 893 (Mich. 1993), the Michigan court was faced with a challenge to fixed fee schedules for compensation of counsel assigned to represent indigent criminal defendants. The fee schedule was overturned on other grounds. The court stated:
The petitions would have us define "reasonable compensation" as the amount privately retained counsel would earn for providing similar services to members of the general public. We refuse to do so. Our review of the statute's legislative CT Page 14679 history leads us to conclude that the impetus underlying the enactment and subsequent amendments of M.C.L. 775.16 . . . was the Legislature's desire to relieve members of the bar of at least some of their professional obligation to provide free legal services to the indigent."
(Emphasis in original).
The court finds such reasoning persuasive concerning "reasonable compensation" pursuant to Connecticut General Statutes § 45a-717(b) for court-appointed counsel for the representation of indigent parties in the Superior Court for Juvenile Matters. Such compensation cannot, without more, be equated with prevailing market rates for attorney compensation, given considerations of public policy, statutory construction and the pro bono obligations that the profession imposes on all members of the bar.
A secondary issue raised concerns the contractual issues between the parties. Counsel for the mother, by accepting appointment to the panel, entered into a contract to perform legal services. The terms of that contract are in writing as to the fees to be paid. There was no evidence presented or arguments advanced why counsel for the mother should be relieved for that portion of the agreement concerning the payment of the fees, but nonetheless continue to enjoy the remaining benefits of the contract. There was no evidence of mistake, fraud, misrepresentation or the like offered permitting recision or reformation of the contract."[P]arties are free to contract for whatever terms on which they may agree [and] . . . a court must enforce the contract as drafted by the parties . . . unless the contract is voidable on grounds such as mistake, fraud or unconscionability." Gibson v. Capano, 241 Conn. 725, 730-31,699 A.2d 68 (1997).
Counsel for the mother was appointed by the court on the understanding and assumption that he had accepted the terms of the contract, including the provisions for the payment of fees. It is a voluntary appointment; no attorneys are compelled to represent indigent parties in juvenile matters cases. There is no evidence that he has sought fees for work in excess of twenty hours, nor sought to resign from the case as it has become too burdensome for him to continue his work. In fact, he has continued under the contract while seeking to avoid the claimed burdens of the fee provision only, without any basis for such relief. To the extent such relief was requested, it is hereby denied. CT Page 14680
Private legal practitioners, in the acceptance of legal work for a fixed rate or hourly fees, must all enter into a professional and financial calculus concerning each client and the work expected. Specifically, they must decide whether, in any given case, the expected reward is adequate for the effort to be expended. It is an undertaking fraught with risk and opportunity, at times financial and at times for the acquisition of experience, professional satisfaction, knowledge and exposure to areas of the practice of law previously unexplored. Perhaps counsel for the mother now regrets the calculus made. If so, his option is to resign and undertake other legal work which, in his opinion, will generate more reasonable legal fees. The fact that his regrets have become public in his motion does not lead the court inexorably to conclude that the fees offered and accepted were or are unreasonable and the court cannot so find.
For all the foregoing reasons, the motions for appropriate relief concerning legal fees are denied.
Barbara M. Quinn, Judge Child Protection Session
[2] Given the court's decision based on statutory grounds and the failure of counsel to articulate and brief this claim, it will not be addressed further in this opinion.
[3] See for example Connecticut General Statutes § 46b-62
allowing the court to order reasonable attorneys fees including for the representation of minor children, and § 46b-87 in the contempt context.
[4] Given this Judge's prior service as a Judge of the Mashantucket Pequot Tribal Court, this court is familiar with the significant differences between the court systems. One major difference is that the volume of work of this nature at the Tribal court is much smaller than in the state system. There are, therefore, no economies of scale available to practitioners, as there might be in the state courts.