******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# BRIAN LEPKOWSKI *v.* PLANNING COMMISSION OF THE TOWN OF EAST LYME ET AL.
## (AC 46146)
## (AC 46159)

Bright, C. J., and Moll and Westbrook, Js.

*Syllabus*

Pursuant to a provision of the East Lyme Subdivision Regulations (§ 4-14-3), "[s]ubdivisions of 20 lots or more where more than 50% of the parcel(s) to be subdivided consist of environmentally sensitive resources such as wetlands, steep slopes (>25%), watercourses, flood hazard areas or ridge lines, shall be subject to an [Environmental Review Team] evaluation . . . ."

The plaintiff appealed to the Superior Court from a decision of the defendant Planning Commission of the Town of East Lyme, approving the defendant R Co.'s resubdivision application. The plaintiff, an abutting landowner, opposed the application, claiming, inter alia, that, pursuant to § 4-14-3 of the subdivision regulations, the defendants were required to obtain an evaluation to assess the natural resources on the property before the application was approved. The defendants were unable to obtain such an evaluation prior to the approval of the application because, when the commission contacted E Co., the entity that performed the evaluations, E Co. informed the commission that it was forgoing such evaluations until it had time to develop a new protocol for the reviews. E Co. did not specify a date on which it would resume conducting the evaluations. In light of this, the commission determined that it was impossible for R Co. to comply with § 4-14-3, and it approved the application. The Superior Court sustained the plaintiff's appeal only with respect to his claim regarding R Co.'s failure to obtain an evaluation. The court determined that § 4-14-3 applied to the application, that the evaluation was a mandatory requirement pursuant to § 4-14-3, that the subdivision regulations did not expressly convey to the commission the authority to waive the requirement, and that, therefore, the commission illegally waived § 4-14-3. On the granting of certification, the defendants filed separate appeals to this court. *Held* that the Superior Court improperly sustained the plaintiff's appeal with respect to his claim premised on § 4-14-3 of the subdivision regulations: the commission complied with § 4-14-3 of the subdivision regulations, which required it to request an evaluation in connection with R Co.'s application and to give E Co. a reasonable opportunity to perform the evaluation but did not mandate that the evaluation had to be completed, as, in contrast to other provisions in § 4-14 of the East Lyme Subdivision Regulations, § 4-14-3 does not indicate that a report with respect to an evaluation must be submitted to the commission, nor does it restrict the commission's ability to act

on the application if an evaluation is not performed or assign the weight that the commission must afford to such a report; moreover, the interpretation that the evaluation was not mandatory aligned with the broader dictionary definitions of the phrase "subject to" as used in § 4-14-3; furthermore, as a municipal legislative enactment, § 4-14-3 was entitled to a presumption of validity and construing the regulation to mandate the completion of an evaluation would have rendered the provision invalid as an impermissible delegation of authority by the commission to E Co.; accordingly, by requesting the evaluation, the commission complied with § 4-14-3 despite that E Co. did not perform the evaluation and indicated that it had no intention of doing so until it established a new protocol for such evaluations at some unspecified future date.

Argued January 10—officially released April 30, 2024

*Procedural History*

Appeal from the decision of the named defendant approving a resubdivision application filed by the defendant Real Estate Service of Conn., Inc., brought to the Superior Court in the judicial district of New London and tried to the court, *O'Hanlan, J.*; judgment sustaining in part the plaintiff's appeal, from which the defendants, on the granting of certification, filed separate appeals to this court. *Reversed in part*; *judgment directed.*

*Mark S. Zamarka*, for the appellant in Docket No. AC 46146 and the appellee in Docket No. AC 46159 (named defendant).

*Matthew Ranelli*, with whom was *Chelsea C. McCallum*, for the appellant in Docket No. AC 46159 and the appellee in Docket No. AC 46146 (defendant Real Estate Service of Conn., Inc.).

*Paul H. D. Stoughton*, with whom, on the brief, was *John F. Healey*, for the appellee in both appeals (plaintiff).

*Opinion*

MOLL, J. The defendants, the Planning Commission of the Town of East Lyme (commission) and Real Estate

Service of Conn., Inc. (RESC), each appeal from the judgment of the Superior Court sustaining in part the appeal brought by the plaintiff, Brian Lepkowski, from the commission's decision approving a resubdivision application filed by RESC.[1] The dispositive claim asserted by the defendants is that the court incorrectly determined that § 4-14-3 of the East Lyme Subdivision Regulations (subdivision regulations)[2] required the completion of an Environmental Review Team (ERT) evaluation in connection with RESC's application and that, consequently, the court improperly concluded that the commission illegally waived § 4-14-3 in granting RESC's application without an ERT evaluation having been performed. We agree with the defendants and, accordingly, reverse in part the judgment of the Superior Court.

The following facts, as set forth by the court or as undisputed in the record, and procedural history are relevant to our resolution of these appeals. The plaintiff owns and resides on property located at 27 Green Valley Lake Road in East Lyme. The plaintiff's property abuts land controlled by RESC. In 2017, RESC filed an application for a resubdivision of the land abutting the plaintiff's property (2017 application). In connection with the 2017 application, Gary Goeschel, the town of East Lyme's planning director, and Jeanne Davies, the executive director of Connecticut Resource Conservation and Development Area, Inc. (RC&D), the organization responsible for performing ERT evaluations,[3]

---

[1] The defendants' respective direct appeals, although not consolidated, were heard together at oral argument before this court.

[2] All references to the East Lyme Subdivision Regulations are to the revised regulations effective March 24, 2016, which are the governing regulations in this case.

Section 4-14-3 of the East Lyme Subdivision Regulations provides in relevant part that certain subdivisions "shall be subject to an evaluation by the Eastern Connecticut Environmental Review Team. . . ."

[3] See footnote 11 of this opinion.

exchanged email correspondence, which correspondence was entered into the administrative record. The emails reflected that (1) on July 17, 2017, Goeschel asked Davies for information about requesting an ERT evaluation in relation to the 2017 application, and (2) Davies responded on July 19, 2017, writing in relevant part that (a) the ERT program was a "limited program these days . . . for municipalities and land trust[s] who want to evaluate the natural resources on [a] property," (b) although RC&D was "working to expand the program at some point," ERT evaluations for development applications "became rare about [five] years ago, due to the time constraints and the availability of volunteers," (c) the ERT evaluation process takes approximately two to three months to complete, and (d) the commission was invited to "talk" if it had the "three months [that are] needed for an ERT [evaluation] . . . ." RESC subsequently withdrew the 2017 application.

On May 18, 2018, RESC filed a new resubdivision application, seeking to create a twenty-three lot "Conservation Design Development" on the land abutting the plaintiff's property (2018 application). The commission conducted a public hearing on the 2018 application over the course of six days between June 26 and October 9, 2018. The plaintiff, as an abutting landowner and a statutory intervenor pursuant to General Statutes § 22a-19 (a) (1),[4] opposed the 2018 application.

[4] General Statutes § 22a-19 (a) (1) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

During the public hearing, there were discussions regarding whether an ERT evaluation would be performed in connection with the 2018 application. One of the exhibits entered into the administrative record consisted of emails that Goeschel and Davies exchanged in September and October, 2018. The emails reflected in relevant part that (1) on September 4, 2018, Goeschel requested an ERT evaluation with regard to the 2018 application, and (2) on October 1, 2018, Davies informed Goeschel that, "[b]ased on feedback from our attorney . . . and the turnaround time for the subdivision public hearing closure in East Lyme, the Executive Committee and ERT Task Force decided, with regret, to [forgo ERT] development reviews until they have time to develop [a] new protocol, as advised by our attorney, for ERT development reviews."

On December 4, 2018, the commission unanimously voted to approve a resolution granting the 2018 application, with several conditions. In granting the 2018 application, the commission determined in relevant part that it was "impossible" for RESC to comply with § 4-14-3 of the subdivision regulations[5] in light of Davies' correspondence reflecting that ERT evaluations were not being done for development applications pending the establishment of a new protocol.

The plaintiff appealed to the Superior Court from the commission's decision granting the 2018 application. The plaintiff raised several claims on appeal, including that the commission improperly granted the 2018 application notwithstanding that an ERT evaluation had not been performed as required pursuant to § 4-14-3 of the subdivision regulations. The plaintiff further asserted that RESC had not requested a waiver of § 4-14-3, and, in any event, such a waiver was not authorized pursuant

---

[5] The commission referred to § 4-13-3 of the subdivision regulations, which provision does not exist. We construe this reference to be a scrivener's error.

to the subdivision regulations. In their respective briefs on the merits, the commission and RESC argued in relevant part that the administrative record demonstrated, as the commission had determined, that compliance with § 4-14-3 was impossible because RC&D was not performing ERT evaluations for development applications at the time. RESC further argued that § 4-14-3 was inapplicable to the 2018 application.

On May 13, 2022, the trial court, *O'Hanlan, J.*, issued a memorandum of decision sustaining the plaintiff's appeal only insofar as the plaintiff claimed that the commission improperly granted the 2018 application because an ERT evaluation had not been completed in accordance with § 4-14-3 of the subdivision regulations.[6] The court framed the legal issue to be "whether the commission's action, in not requiring the ERT evaluation, essentially waived the requirement of . . . § 4-14-3 for [the 2018] application without authority, and thus violated its own regulations." The court determined that (1) § 4-14-3 applied to the 2018 application, (2) an ERT evaluation is a "mandatory" requirement prescribed by § 4-14-3, and (3) the subdivision regulations did not expressly convey authority permitting the commission to waive § 4-14-3.[7] The court proceeded to conclude that, in granting the 2018 application without an ERT evaluation, the commission illegally waived § 4-14-3.[8]

---

[6] The court stated that the plaintiff had abandoned all but seven of the claims raised in his brief on the merits. The court denied the plaintiff's appeal as to his remaining claims, with the exception of his claim regarding § 4-14-3 of the subdivision regulations.

[7] Section 4-13 of the East Lyme Subdivision Regulations provides in relevant part: "Only as specifically authorized within these Regulations, the Commission may waive certain requirements by a three-quarters vote of all members, when it is demonstrated that strict compliance with such Regulations will cause an exceptional difficulty or undue hardship. The applicant shall submit a waiver request in writing at the time of application, and the Commission shall require a public hearing, and shall not grant a waiver unless it finds the following [enumerated] conditions are met . . . ."

[8] With regard to the issue of whether compliance with § 4-14-3 of the subdivision regulations was impossible, the court stated that "[t]here is

On June 1, 2022, the defendants each filed a motion to reargue, both of which the court summarily denied on August 22, 2022. Thereafter, the defendants each filed a petition for certification to appeal from the trial court's judgment, both of which this court granted on December 13, 2022. These appeals followed.

On February 16, 2023, in response to a motion for articulation filed by the commission, the court issued an articulation of its decision. The court articulated in relevant part that, "[a]ccording to § 4-14-3 of the [subdivision regulations] . . . an [ERT] evaluation . . . was required. The commission did not require such an evaluation in its approval [of the 2018 application]. Thus, the court concluded that the commission illegally 'essentially waived' § 4-14-3 . . . ."[9] (Citation omitted.)

The defendants' dispositive claim in these appeals is that the court incorrectly determined that § 4-14-3 of the subdivision regulations required that an ERT evaluation be performed in connection with the 2018 application and, consequently, improperly concluded that the commission illegally waived § 4-14-3 in granting the 2018 application despite the absence of an ERT evaluation.[10] The defendants maintain that (1) § 4-14-3 requires

some apparent factual inconsistency about the 'impossibility' conclusion . . . ." The court further stated that "[t]he characterization of 'impossibility' articulated in the record by [RESC] and adopted by the commission . . . may explain why the requirement cannot be met. But that does not explain how, meaning under what authority, the commission excused, or waived, this clear . . . requirement, if not in violation of" the subdivision regulations. (Emphasis omitted.)

[9] With respect to the issue of whether compliance with § 4-14-3 of the subdivision regulations was impossible; see footnote 8 of this opinion; the court articulated that "[t]he evidence in the record does not support a finding of impossibility. . . . [T]he court concluded that the 'impossibility' of getting an ERT evaluation was simply not accurate." (Citations omitted.)

[10] RESC briefed this claim in both its principal appellate brief and its reply brief filed in its appeal, and the commission indicated in its appellate brief filed in RESC's appeal that it was adopting RESC's principal appellate brief. In its respective appeal, however, the commission briefed this claim only in its reply brief. Ordinarily, "we consider an argument inadequately briefed when it is delineated only in the reply brief." *Hurley* v. *Heart Physicians,*

the commission (a) to request an ERT evaluation in connection with certain applications and (b) to give the Eastern Connecticut Environmental Review Team (ECERT) an opportunity to conduct the ERT evaluation, with no attendant mandate that the ERT evaluation must be completed, and (2) the commission complied with § 4-14-3 by requesting an ERT evaluation from RC&D[11] in relation to the 2018 application, which RC&D declined to perform. The plaintiff argues that the court correctly determined that § 4-14-3 required the performance of an ERT evaluation vis-à-vis the 2018 application and, therefore, the commission committed error in granting the 2018 application without an ERT evaluation. We agree with the defendants.[12]

*P.C.*, 298 Conn. 371, 378 n.6, 3 A.3d 892 (2010). Under the unique circumstances of the present case, where (1) RESC has properly briefed this claim in its appeal and (2) RESC and the commission are appealing from the same judgment and seeking the same relief, such that resolving RESC's appeal in its favor necessarily affords the commission the relief that it requests in its appeal, we adjudicate both appeals on the basis of this claim notwithstanding the commission's failure to brief the claim properly in its appeal.

[11] Although § 4-14-3 of the subdivision regulations refers to ERT evaluations performed by ECERT, the record reflects that the commission contacted RC&D to request an ERT evaluation. The defendants represent that "ECERT is a volunteer program of a nongovernmental, not-for-profit entity known as [RC&D] . . . ." The plaintiff represents that "RC&D is the entity with which [ECERT] is affiliated." Thus, we discern no apparent dispute that, in submitting a request for an ERT evaluation to RC&D, the commission requested an ERT evaluation as contemplated by § 4-14-3.

[12] In their respective appeals, the defendants further claim that the court improperly (1) determined that the commission illegally waived § 4-14-3 of the subdivision regulations and (2) rejected the defendants' arguments regarding whether compliance with § 4-14-3 was impossible. In light of our resolution of the defendants' dispositive claim, we need not address the merits of these other claims.

In addition, in its appeal, RESC asserts "[i]n the alternative" that the 2018 application did not trigger the requirements of § 4-14-3 of the subdivision regulations, and, therefore, the court improperly concluded that § 4-14-3 applied to the 2018 application. The commission adopts this claim in its appellate brief filed in RESC's appeal, as well as in its reply brief filed in its appeal, but it failed to brief this claim in its principal appellate brief filed in its appeal. See footnote 10 of this opinion. We decline to address the merits of this claim; instead, for purposes of our analysis of the defendants'

We begin by "set[ting] forth the deferential standard of review that applies to the administrative decisions made by zoning entities. In traditional zoning appeals, the scope of judicial review depends on whether the zoning commission has acted in its legislative or administrative capacity. . . . In considering . . . an application for subdivision approval, a commission acts in an administrative capacity. . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The [Appellate Court and the] trial court . . . decide whether the board correctly interpreted the section [of the relevant regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. . . .

"[U]pon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . . . We, in turn, review the action of the trial court. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision . . . . Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing." (Citations omitted; internal quotation marks omitted.) *Kerlin* v. *Planning & Zoning Commission*, 222 Conn. App. 141, 158–59, 304 A.3d 148 (2023).

dispositive claim, we assume arguendo that the court correctly concluded that § 4-14-3 applied to the 2018 application.

The defendants' claim requires us to interpret the subdivision regulations. "Because the interpretation of the regulations presents a question of law, our review is plenary. . . . Additionally, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . Ordinarily, [appellate courts afford] deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Internal quotation marks omitted.) Id., 162–63. "If a board's time-tested interpretation of a regulation is reasonable, however, that interpretation should be accorded great weight by the courts."[13] (Internal quotation marks omitted.) *Cunningham* v. *Planning & Zoning Commission*, 90 Conn. App. 273, 283, 876 A.2d 1257, cert. denied, 276 Conn. 915, 888 A.2d 83 (2005).

"Our Supreme Court has observed that regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended . . .

---

[13] No special deference to the commission is warranted in this case because § 4-14-3 of the subdivision regulations has not previously been subjected to judicial scrutiny and there is no indication in the record that the commission has applied a time-tested interpretation of the provision. See, e.g., *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 715, 960 A.2d 1018 (2008) (declining to defer to zoning board's construction of zoning regulation when regulation had not previously been subjected to judicial scrutiny and board did not indicate that it had applied time-tested interpretation of regulation).

and the words employed therein are to be given their commonly approved meaning. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . .

"Regulations must be viewed to form a cohesive body of law, and they must be construed as a whole and in such a way as to reconcile all their provisions as far as possible. . . . This is true because particular words or sections of the regulations, considered separately, may be lacking in precision of meaning to afford a standard sufficient to sustain them. . . . When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results. . . . [W]e consider the statute as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation. . . . Stated otherwise, whether the board properly interpreted and applied the relevant regulations depends upon whether it read the particular regulations in the context of all of the regulations, their evident purpose and policy, and recognized principles of zoning in general." (Citations omitted; internal quotation marks omitted.) *Kerlin* v. *Planning & Zoning Commission*, supra, 222 Conn. App. 163–64.

We first examine the text of § 4-14-3 of the East Lyme Subdivision Regulations, titled "Environmental Review Team (ERT) Evaluation," which provides: "Subdivisions of 20 lots or more where more than 50% of the parcel(s) to be subdivided consist of environmentally sensitive resources such as wetlands, steep slopes (> 25%), watercourses, flood hazard areas or ridge lines, *shall be subject to an evaluation by the Eastern Connecticut Environmental Review Team.*[14] This requirement does not preclude the Commission from requesting an Environmental Review Team Evaluation for applications which do not meet the above parameters but for which concerns about environmental impacts of the development and their proper mitigation exist." (Emphasis added; footnote added.)

The parties advance conflicting interpretations of the phrase "subject to" as used in § 4-14-3 of the subdivision regulations, which is not defined therein. The plaintiff proposes that we construe "subject to" narrowly, reading § 4-14-3 to provide that an ERT evaluation "must occur for a subdivision application that meets the relevant criteria to be approved." The defendants maintain that the meaning of "subject to" is broader, contending that " 'subject to' refers to being exposed to or the potential for an [ERT] evaluation by . . . ECERT but not that such an evaluation must be conducted by . . . ECERT even if it declines to do so," such that "the commission did subject the [2018] application to an [ERT] evaluation by submitting it to . . . ECERT (and following up to urge . . . ECERT to conduct the evaluation) but . . . ECERT declined . . . to conduct the evaluation."

We turn to dictionary definitions for guidance in interpreting undefined terms in regulations. See, e.g., *Rapoport* v. *Zoning Board of Appeals*, 301 Conn. 22, 45, 19

_____

[14] We assume that § 4-14-3 of the subdivision regulations applies to the 2018 application. See footnote 12 of this opinion.

A.3d 622 (2011). Merriam-Webster's Online Dictionary defines "subject to" to mean (1) "affected by or possibly affected by (something)," (2) "likely to do, have, or suffer from (something)" or (3) "dependent on something else to happen or be true." Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary/subject%20to (last visited April 22, 2024). Black's Law Dictionary defines "[s]ubject to" to mean "[l]iable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable for." Black's Law Dictionary (6th Ed. 1990) p. 1425; see also Black's Law Dictionary (11th Ed. 2019) p. 1723 (defining "subject" to mean, inter alia, "[d]ependent on or exposed to (some contingency); esp., being under discretionary authority," with sample sentence reading, "funding is subject to the board's approval"). These assorted definitions can support either a broad or limited reading of the phrase "subject to" as used in § 4-14-3 of the subdivision regulations.

In accordance with the directive in § 1-2z to consider the statutory text in relation to other statutes, in interpreting § 4-14-3 of the subdivision regulations, we consider the provision in relation to the two additional provisions found in § 4-14 of the East Lyme Subdivision Regulations, which is titled "Applicable Commission/ Agency Reviews." Section 4-14-1 of the East Lyme Subdivision Regulations, titled "Inland Wetlands Agency," provides: "If an application involves land regulated as an inland wetland or watercourse under the provisions of Chapter 440 of the Connecticut General Statutes, the applicant shall submit an application to the Inland Wetlands Agency no later than the day the application is filed for subdivision or re-subdivision. The Planning Commission shall not render a decision until the Inland Wetlands Agency has submitted a report with its final decision to the Planning Commission. In making its

decision, the Planning Commission shall give due consideration to the report of the Inland Wetlands Agency.''

Section 4-14-2 of the East Lyme Subdivision Regulations, titled "Regional Planning Commission," provides: "Whenever a subdivision of land is planned, the area of which abuts or includes land in the Town of East Lyme and an adjacent municipality, the Commission of each municipality shall, before approving the plan, submit it to the Regional Planning Commission. Within thirty (30) days after receiving the submitted subdivision plans, the Regional Planning Commission shall report its findings on the inter-municipal aspects of the proposed subdivision to the municipalities. Failure to submit such report back to the municipalities within thirty (30) days after transmittal shall be presumed to indicate that the Regional Planning Commission does not disapprove the proposed subdivision. The report of the Regional Planning Commission shall be advisory only."

Sections 4-14-1 and 4-14-2 of the subdivision regulations set forth substantively distinct requirements for the reviews specified therein relative to § 4-14-3 of the subdivision regulations. In addition to mandating the submission of an application or subdivision plans to the Inland Wetlands Agency (IWA) or the Regional Planning Commission (RPC) for review, §§ 4-14-1 and 4-14-2 expressly (1) indicate that the IWA or the RPC must submit reports of their reviews to the commission, (2) provide specific directions on how the commission is (a) to proceed if a report from the RPC is not received within a prescribed time period or (b) to forgo proceeding until a report from the IWA is received, and (3) assign the weight that the commission must give to such reports. In stark contrast, § 4-14-3 does not (1) indicate that a report with respect to an ERT evaluation must be submitted to the commission, (2) restrict the commission's ability to act on an application if an ERT

evaluation is not performed and an attendant report is not submitted, or (3) assign the weight that the commission must afford to such a report. These differences inform our interpretation of § 4-14-3 and indicate that an ERT evaluation is not a mandatory review that must be completed to satisfy § 4-14-3. Moreover, this interpretation aligns with the broader dictionary definitions of the phrase "subject to" as used in § 4-14-3. See Merriam-Webster Online Dictionary, supra (definitions of "subject to" include "*possibly* affected by (something)," and "*likely* to do, have, or suffer from (something)" (emphasis added)); Black's Law Dictionary (11th Ed. 2019) p. 1723 (definitions of "subject" include "[d]ependent on *or exposed* to (some contingency)" (emphasis added)).

Additionally, we are mindful that § 4-14-3 of the subdivision regulations, as a municipal legislative enactment, is entitled to a presumption of validity. See *Pollio* v. *Planning Commission*, 232 Conn. 44, 49, 652 A.2d 1026 (1995) ("a presumption of validity is accorded to municipal ordinances"); see also *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 529, 686 A.2d 481 (1996) ("a zoning regulation is entitled to a presumption of validity"). Construing § 4-14-3 of the subdivision regulations to mandate the completion of an ERT evaluation would render the provision invalid as an impermissible delegation of authority by the commission to ECERT. "The regulation and approval of subdivisions fall within the purview of the town planning commission in accordance with the provisions of General Statutes §§ 8-18 through 8-30a . . . ." (Footnote omitted.) *Thoma* v. *Planning & Zoning Commission*, 31 Conn. App. 643, 647–48, 626 A.2d 809 (1993), aff'd, 229 Conn. 325, 640 A.2d 1006 (1994). In *Thoma,* this court concluded that a zoning regulation constituted an impermissible delegation of authority by the town of Canterbury's planning and zoning commission to the town's inland wetlands

agency when the regulation, which prohibited the planning and zoning commission from approving an application for a subdivision of land containing inland wetlands if the inland wetlands agency failed to find that such a subdivision would not adversely affect any inland wetlands area, conflicted with what is now General Statutes § 8-26 (e), which requires that a planning commission give "due consideration" to the report of the inland wetlands agency. *Thoma* v. *Planning & Zoning Commission*, supra, 644, 651. As this court summarized, "[u]ltimate authority over approval of a subdivision rests with the [planning and zoning] commission, and any regulation that abrogates this authority is invalid." Id., 651.

Pursuant to the plaintiff's proposed construction of § 4-14-3 of the subdivision regulations, the commission would be forbidden from approving an application "subject to" an ERT evaluation if, for any reason, the ERT evaluation could not be performed. Under this paradigm, ECERT effectively would be capable of vetoing, through inaction, any such application, thereby enabling a nongovernmental entity to strip the commission of its "[u]ltimate authority over approval of a subdivision . . . ." *Thoma* v. *Planning & Zoning Commission*, supra, 31 Conn. App. 651; cf. East Lyme Subdivision Regs., § 4-14-1 (prohibiting commission from acting on application for subdivision of land regulated as inland wetland or watercourse until IWA submits report[15] and directing commission to give "due

---

[15] If the IWA fails to act on the application, the applicant may seek recourse by filing an application with the Commissioner of Energy and Environmental Protection. See General Statutes § 22a-42a (c) (1) ("[i]f the inland wetlands agency, or its agent, fails to act on any application within [enumerated time periods], the applicant may file such application with the Commissioner of Energy and Environmental Protection who shall review and act on such application in accordance with this section"). We are unaware of any authority providing an applicant with a similar remedy if an ERT evaluation is not, or cannot be, completed.

consideration" to such report); East Lyme Subdivision Regs., § 4-14-2 (RPC's failure to submit report specified in provision by specified deadline creates presumption that RPC does not disapprove of proposed subdivision and RPC's report, if filed, is advisory only). We decline to construe § 4-14-3 in a manner that undermines the presumption of validity attached to it.

In sum, we interpret § 4-14-3 of the subdivision regulations to require the commission to request an ERT evaluation in connection with certain applications, such as the 2018 application, and to give ECERT a reasonable opportunity to perform the ERT evaluation, but the provision does not further mandate that the ERT evaluation must be completed. Applying this interpretation here, we conclude that the commission complied with § 4-14-3 as there is no dispute that (1) the commission requested an ERT evaluation vis-à-vis the 2018 application and (2) RC&D, after having received the request and exchanged correspondence with the commission, did not perform the ERT evaluation and indicated that it had no intention of doing ERT evaluations for development applications until it established a new protocol for such evaluations at some unspecified future date. Accordingly, we further conclude that the court incorrectly determined that the commission committed error, as a matter of law, in granting the 2018 application notwithstanding that an ERT evaluation had not been completed, and, therefore, the court improperly sustained the plaintiff's appeal on the basis of his claim premised on § 4-14-3.

The judgment is reversed only as to the determination to sustain the plaintiff's appeal on the basis that § 4-14-3 of the East Lyme Subdivision Regulations required the completion of an Environmental Review Team evaluation in connection with RESC's application and the conclusion that the commission illegally waived § 4-14-3 in granting the application without such an evaluation

having been performed, and the case is remanded to the trial court with direction to render judgment denying the plaintiff's appeal with respect to that issue; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.