## BOARD OF EDUCATION OF THE TOWN OF HAMDEN *v.* STATE BOARD OF EDUCATION ET AL. (SC 17445)

Sullivan, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.*

---

[*] The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued January 3—officially released May 30, 2006

*Jennifer D. Janelle*, with whom was *Erik J. Ness*, for the appellant (plaintiff).

*Ralph Urban*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellee (named defendant).

*Christopher M. Licari*, for the appellee (defendant Highville Mustard Seed Charter School).

*Kelly Balser Moyher* filed a brief for the Connecticut Association of Boards of Education as amicus curiae.

ZARELLA, J. The principal issue in this appeal is whether a local or regional public school district, in which a charter school is located, is required to provide transportation services to preschool children residing within the district and enrolled in the charter school. The plaintiff, the board of education of the town of Hamden (town board), appeals from the judgment of the trial court dismissing its administrative appeal from a decision of the defendant state board of education (state board), which reversed the decision of the town board to discontinue transportation services[1] for preschool children residing within the Hamden school district (district) and enrolled at the defendant Highville Mustard Seed Charter School (Highville).[2] The town board claims that, under the relevant statutory provisions, preschool children attending charter schools within the district are not entitled to the provision of transportation services by the town board. We agree and, accordingly, reverse the judgment of the trial court.

The following relevant facts and procedural history are set forth in the memorandum of decision of the trial court. "Highville . . . is a state public charter school located in [the town of] Hamden . . . [and] organized and operat[ed] pursuant to [General Statutes § 10-66aa et seq.] [Highville's] grade levels range from prekindergarten, whose students are three and four years old, through eighth grade. The organization of [Highville] in terms of the ages and grade levels was

---

[1] A review of the record indicates that the town board had been providing transportation to preschool students enrolled at the Highville Mustard Seed Charter School for several years prior to its discontinuation.

[2] In addition to the state board and Highville, the following parents of preschool children who resided in Hamden and were enrolled at Highville when the action was initiated also are defendants: Mattie Alston, Tinisha Gist, Tamika Gordon, Gwendette Hinton, Darren Johnson, Evonne Johnson and Alexis Powell. We refer to these other defendants collectively as the parents.

approved by the [state board] pursuant to [General Statutes § 10-66bb (d) (7)]. Highville has operated continuously since the 1998–1999 school year.

"On or about August 1, 2003, Alida D. Begina, superintendent of schools for the town of Hamden . . . sent a letter to Lyndon Pitter, Highville's executive director, advising him that [the town board] would not provide transportation to preschool students enrolled at Highville during the 2003–2004 school year . . . .[3]

"A number of parents of [the] preschool students who resided in Hamden pursued an appeal to [the town board] . . . and via letter dated September 26, 2003 . . . [the town board] notified [the] parents that, on October 3, 2002, it would conduct a hearing pursuant to the provisions of [General Statutes § 10-186].

"[The town board] held a hearing on the aforementioned date . . . . A written decision dated October 13, 2000, was issued, [in which the town board ruled] that [it was] not required, pursuant to [General Statutes § 10-66ee (f)], to provide transportation to preschool students residing in [the district] and enrolled at Highville . . . .

"By way of letters dated October 28, 2003, a number of the parents who appealed to [the town board] pursued an appeal to the [state board] . . . .

"On November 25, 2003, the state board, acting through a designated impartial hearing officer, conducted a hearing pursuant to the provisions of § 10-186 (b) (2) . . . . Highville requested and was granted interested party status at the aforementioned hearing.

---

[3] Begina informed Pitter that because state funding to Hamden had been reduced for that year, the district could not incur the additional cost of providing transportation to preschool students attending Highville, which would have required an additional bus.

"The state board rendered its decision [in favor of the parents] via written memorandum dated March 17, 2003 . . . . [The town board] thereafter filed [an appeal to the Superior Court] in conjunction with which it sought a stay of the state board's decision ordering it to provide transportation to preschool students residing in [the district] and enrolled at Highville.[4] The application for a stay was the subject of a May 11, 2004 hearing . . . . After receiving testimony and entertaining arguments of counsel, [the court] ordered the decision stayed only for the remainder of the 2003–2004 school year."

Thereafter, the trial court concluded that, under the plain language of § 10-66ee (f), the town board was required to provide transportation services to preschool students residing within the district and enrolled at Highville. The court thus rendered judgment dismissing the town board's appeal on the ground that, "[t]o strictly construe the [relevant] statutes as is argued by [the town board] would be to frustrate the legislation that gives boards of education the power to approve charter schools that vary in their educational makeup on the bases of age and grades as it provided for in the enabling legislation." The town board appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The town board claims that it is not required by law to provide transportation services to preschool children who reside within the district and who are enrolled at Highville. It claims that Connecticut's education statutes limit the obligation of local public schools to provide transportation to children of kindergarten age or

[4] The state board and Highville are the only defendants to have appeared and participated in the town board's appeal to the Superior Court and in the present appeal.

to children no younger than five years old. The state board and Highville respond that the plain language of the relevant statutory provisions requires that the town board provide transportation to preschool children enrolled at Highville who reside within the district. We agree with the town board.

We begin our analysis with the applicable standard of review. The issue before the court requires us to interpret several statutory provisions pertaining to the transportation of children enrolled in charter schools. "[Although] [o]rdinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes . . . when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 274 Conn. 119, 127, 874 A.2d 776 (2005). In the present case, the pertinent statutory provisions previously have not been subject to judicial scrutiny insofar as they relate to the provision of transportation services to preschool children attending charter schools. The standard of review is therefore plenary.

"[O]ur fundamental objective [in statutory interpretation] is to ascertain and give effect to the apparent intent of the legislature . . . ." (Internal quotation marks omitted.) *Alexson* v. *Foss*, 276 Conn. 599, 604–605, 887 A.2d 872 (2006). General Statutes § 1-2z provides that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratex-

tual evidence of the meaning of the statute shall not be considered." With these principles in mind, we turn to the statutes in question.

General Statutes § 10-66dd (b) (1) provides in relevant part that "charter schools *shall be subject to all federal and state laws governing public schools.*" (Emphasis added.) General Statutes § 10-66ee (f) provides in relevant part that "[t]he local or regional board of education of the school district in which the charter school is located shall provide transportation services for students of the charter school who reside in such school district pursuant to section 10-273a unless the charter school makes other arrangements for such transportation. . . ." Because § 10-66ee (f) does not define the term "students," we seek additional guidance from General Statutes § 10-273a, which is incorporated by reference into § 10-66ee (f).

General Statutes § 10-273a provides for the reimbursement of public school transportation costs and applies to "[a]ny town transporting children to and from any *public elementary school, including kindergartens,* or to and from any public secondary school within said town . . . ." (Emphasis added.) In light of the fact that § 10-66ee (f) requires that transportation services be provided "pursuant to" § 10-273a, that the latter statute applies to children of kindergarten age or older and that General Statutes § 10-66dd (b) (1) provides that charter schools "shall be subject to all federal and state laws governing public schools," we conclude that § 10-66ee (f) cannot be read more broadly than § 10-273a to require that local or regional boards of education provide transportation services to preschool children enrolled in charter schools.

This conclusion is supported by other language in General Statutes § 10-66ee (f), which instructs that "[t]he parent or guardian of any student denied the

transportation services required to be provided pursuant to this subsection may appeal such denial *in the manner provided* in sections 10-186 and 10-187." (Emphasis added.) Sections 10-186 and 10-187 in turn permit appeals on behalf of children "five years of age and over and under twenty-one years of age"; General Statutes § 10-186 (a); who are enrolled in public schools and allege the denial of school accommodations to which they are entitled under the statutory scheme. To interpret § 10-66ee (f) as being applicable to preschool children would create an immediate incongruity within the statute, given that the statute specifically directs that appeals are to be brought "in the manner provided in sections 10-186 and 10-187," which do *not* permit appeals on behalf of preschool children. General Statutes § 10-66ee (f). "It is an accepted principle of statutory construction that, if possible, the component parts of a statute should be construed harmoniously in order to render an overall reasonable interpretation." (Internal quotation marks omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 748, 865 A.2d 428 (2005). Accordingly, the only way to read § 10-66ee (f) so as to achieve an internally consistent and harmonious result is to conclude that public school districts are not required to provide transportation services to preschool children attending charter schools.

Moreover, consistent with the aforementioned principle, "the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . [T]he General Assembly is always presumed to know all the existing statutes and the effect that its

action or non-action will have upon any one of them."
(Citations omitted; internal quotation marks omitted.)
*Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310,
819 A.2d 260 (2003). This principle is in accord with the
directive of § 1-2z to consider a statute in relationship to
other statutes on the same subject matter in order to
determine whether its meaning is plain and unam-
biguous.

General Statutes § 10-186 (a), which describes the
obligations of public school boards to students enrolled
in public schools, provides in relevant part that "[e]ach
local or regional board of education shall furnish, *by
transportation or otherwise*, school accommodations
so that *each child five years of age and over and under
twenty-one years of age* who is not a graduate of high
school or vocational school may attend public school
. . . ." (Emphasis added.) General Statutes § 10-281 (a),
which governs the operation of private, nonprofit
schools, similarly provides that "[a]ny municipality or
school district shall provide, for its children enrolled
in any grade, *from kindergarten to twelve, inclusive*,
attending nonpublic nonprofit schools therein, *the same
kind of transportation services* provided for its chil-
dren in such grades attending public schools . . . ."
(Emphasis added.)

Section 10-281 is notable not only because it contains
language similar to that used in § 10-186 (a) but because
it explicitly declares that children attending private,
nonprofit schools shall receive "the *same kind* of trans-
portation services" as children enrolled in public
schools. (Emphasis added.) General Statutes § 10-281
(a). Reading §§ 10-281 and 10-186 (a) together with
§§ 10-66ee (f) and 10-273a, which employ comparable
language, therefore suggests that the legislature
intended to develop a consistent policy, limiting obliga-
tory transportation services by local and regional public
school districts to children attending kindergarten or

children no younger than five years of age. Indeed, to require that transportation services be provided to preschool children attending charter schools would create dissonance, rather than harmony, within the statutory scheme because it would grant a benefit to preschool children enrolled in charter schools that is not available to their counterparts enrolled in public elementary schools or private, nonprofit schools also located within the district.

Furthermore, "[i]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Echavarria* v. *National Grange Mutual Ins. Co.*, 275 Conn. 408, 415, 880 A.2d 882 (2005). The reference to § 10-273a in § 10-66ee (f) would be superfluous if we were to construe the charter school statute to include a requirement that transportation services be provided to preschool students because such services are not subject to reimbursement by the state under § 10-273a. When the legislature wants to limit services to students by age or grade, it knows how to do so, as evidenced by the language in §§ 10-66ee (f), 10-186, 10-187 and 10-273a, which refers to children of specified ages or grades. Cf. General Statutes § 10-4o (family resource center programs provided for families with infants and other preschool children of specified ages); General Statutes § 10-16p (2) (defining preschool children by age with respect to eligibility for school readiness programs). Accordingly, we conclude that § 10-66ee (f) does not apply to preschool students and that local public school boards are not required to provide transportation services to those students.

The state board argues that the plain language of General Statutes §§ 10-220 (a), 10-66bb and 10-66ee (f)

requires that local school boards provide transportation services to preschool students living within a board's jurisdiction and enrolled in a charter school within the jurisdiction. The state board contends that none of the foregoing statutes expressly refers to any limitations pertaining to age or grade, insofar as those statutes require that services be provided to "students," and, therefore, when read in its entirety, the statutory scheme obligates the town board to provide transportation to preschool students enrolled at Highville. We disagree.

General Statutes § 10-220 (a), which describes the duties of local and regional boards of education, requires that such boards "provide for the transportation of children wherever transportation is reasonable and desirable . . . ." Section 10-66bb, which sets forth the application requirements for the establishment of charter schools, provides that the application shall describe "the organization of the school in terms of the ages or grades to be taught and the total estimated enrollment of the school . . . ." General Statutes § 10-66bb (d) (7). Finally, General Statutes § 10-66ee (f) provides in relevant part that local or regional boards of education "shall provide transportation services for students of the charter school who reside in such school district pursuant to section 10-273a unless the charter school makes other arrangements for such transportation. . . ."

The fact that none of the foregoing statutes limits transportation services to students on the basis of age or grade is irrelevant because § 10-66ee (f) incorporates § 10-273a, which specifically applies to children enrolled in kindergarten and older, thus implicitly excluding preschool children. Moreover, none of the statutes cited by the state board specifies that the transportation services to which charter school students are entitled *must* be provided by the district. Finally, as

we previously noted, General Statutes 10-66dd (b) (1) provides that charter schools shall be subject to state laws governing public schools, which do not require that transportation services be provided to preschool students. Accordingly, the statutes on which the state board relies do not support the proposition that public school districts must provide transportation for preschool children attending charter schools.

The state board maintains that § 10-273a is simply a reimbursement statute that was enacted long before § 10-66ee (f), that it does not establish a fundamental duty on the part of the district to provide transportation services to children of certain ages and that it does not contain exclusionary language that would relieve the district from the duty of providing transportation services to children younger than five years of age. This argument also lacks merit.

"There is a presumption that the legislature, in enacting a law, does so with regard to existing relevant statutes so as to make one consistent body of law." (Internal quotation marks omitted.) *Starks* v. *University of Connecticut*, 270 Conn. 1, 31, 850 A.2d 1013 (2004). "In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." (Internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 550, 848 A.2d 352 (2004). The language in General Statutes § 10-66ee (f) requiring that transportation services be provided to charter school students "pursuant to [§] 10-273a" would make no sense if the statute applied to preschool students because the cost would not be reimbursable under § 10-273a, whereas all other transportation costs would be reimbursable. To interpret § 10-66ee (f) as the state board insists thus would fail to produce a reasonable and rational result.

The state board further argues that the trial court correctly applied the principle that the more specific

statute should prevail when the court concluded that the language of § 10-66ee (f), which mandates that local and regional boards of education provide transportation to charter school students residing within the district, prevails over the broader language of § 10-186 (a), which governs school accommodations generally. We are unpersuaded.

We recognize the "well-settled principle of [statutory] construction that specific terms covering [a] given subject matter will prevail over general language of . . . another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 346, 680 A.2d 1261 (1996). We disagree, however, that the language of § 10-186 (a) is more general than that of § 10-66ee (f) insofar as each statute addresses the obligation of local and regional public school districts to provide transportation services to students residing within the district. In fact, exactly the opposite is true because the public school statute limits transportation services to children between five and twenty years of age whereas the charter school statute makes no reference to age limitations on the provision of services. We also note that § 10-66ee (f) is not a subordinate part of § 10-186 (a) such that the former can be said to be more specific than the latter merely because the one applies to charter schools and the other applies to public schools. Rather, the two are parallel statutes that address district obligations to provide transportation services to students enrolled in schools of different types.

A better application of the principle on which the state board relies would involve a comparison of the more general language of § 10-66ee (f) with the more specific language of § 10-273a, which limits reimbursement to the town board for transportation costs to students no younger than kindergarten age. Such a com-

parison is more appropriate even though § 10-273a is directed to public schools because General Statutes § 10-66ee (f) *explicitly provides* that its terms are to be construed *"pursuant to"* § 10-273a. (Emphasis added.) The latter is therefore controlling with respect to the age of children attending charter schools who are entitled to transportation by the district.

Highville argues that, just as General Statutes § 10-15c (a)[5] provides that a board of education has discretion to admit children under five years of age to its public schools and must provide them with corresponding transportation under General Statutes § 10-220 (a),[6] so, too, must the district provide preschool children enrolled in charter schools with transportation to and from the schools that they attend. The exception in § 10-15c, however, appears to have been designed to permit the few otherwise qualified children whose fifth birthday falls after the opening day of school to enroll in kindergarten. The statute thus provides no support for an interpretation of § 10-66ee (f) that would entitle *all* preschool children enrolled in charter schools to transportation services but preclude similar children enrolled in public or private, nonprofit schools from receiving comparable services. Indeed, the fact that the statute vests the board with discretion to admit such children counsels against the broad reading suggested by Highville.

Highville also argues that, because charter schools were created as experimental laboratories for the purpose of developing new approaches to education, their operations are unique and distinct from those of tradi-

---

[5] General Statutes § 10-15c (a) provides in relevant part: "[B]oards of education may, by vote at a meeting duly called, admit to any school children under five years of age."

[6] General Statutes § 10-220 (a) provides in relevant part: "Each local or regional board of education shall . . . provide for the transportation of children wherever transportation is reasonable and desirable . . . ."

tional public schools and they are subject only to the supervision of the state board and the provisions contained within their state approved charters. We disagree. General Statutes § 10-66dd (b) (1) expressly provides that "charter schools shall be subject to all federal and state laws governing public schools," and the applicable laws do not require that transportation services be provided to preschool students enrolled in public or private, nonprofit schools.

Finally, to construe § 10-66ee (f) as the state board and Highville suggest would be contrary to our reasoning in *Board of Education* v. *State Board of Education*, 243 Conn. 772, 709 A.2d 510 (1998). In that case, we interpreted language in General Statutes § 10-281 (a) providing that children enrolled in nonpublic, nonprofit schools must be provided "the same kind of transportation services" as children attending public schools to mean that the board of education of the town of Stafford was required to provide children who attended a private, nonprofit school located within the school district with transportation services on days when the public schools were closed. Id., 780. In the course of our analysis, we observed that one of the purposes of the statute was "to provide equal transportation services to students, regardless of whether they attend private or public schools." Id., 782. Accordingly, the fact that the private, nonprofit school was in session on certain days when the public schools were closed did not affect the school district's underlying obligation to transport safely and reliably students enrolled in both public and private, nonprofit schools. See id. We observed that it simply was unreasonable to assume that the legislature was concerned with children's safety only on the days that both public and private schools were in session. Id.

Applying this principle in the present case supports our conclusion that transportation services should not be provided to preschool children attending charter

schools because a similar service is not provided under the statutory scheme to preschool students attending other types of schools for which the district has a transportation obligation. Thus, to do as the state board and Highville request would be contrary to the statutory scheme and would not contribute to a harmonious and consistent body of law that fosters equality of services among the different kinds of schools that are located within the district.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the town board's appeal.

In this opinion the other justices concurred.

---
* The listing of justices reflects their seniority status on this court as of the date of argument.