951 A.2d 714 (2008)
50 Conn.Sup. 542
VIP OF BERLIN, LLC
v.
TOWN OF BERLIN et al.
No. CV06-4012399S.
Superior Court of Connecticut, District of New Britain.
May 27, 2008.
Memorandum filed July 11, 2007.[*]
*715 Silver & Silver, LLP, New Britain, for the plaintiff.
Wiggin & Dana, LLP, Hartford, for the defendants.
ROBERT B. SHAPIRO, J.

I

BACKGROUND
In its amended complaint, the plaintiff, VIP of Berlin, LLC, seeks a declaratory judgment to determine whether the locational restrictions found in § 14-291 of article six of the Berlin municipal code, the sexually oriented business ordinance (ordinance), §§ 14-241 through 14-295, are unenforceable. The plaintiff claims that the locational restrictions are an ultra vires act, constitute de facto zoning, and were not adopted by the Berlin planning and zoning commission (commission) pursuant to the town charter and General Statutes §§ 8-1 and 8-2. In addition, if the court determines that the locational restrictions are ultra vires and, therefore, are null and void, the plaintiff seeks an injunction restraining the defendants, the town of Berlin (town) and its town manager, from enforcing § 14-291, only, against the plaintiff.
The plaintiff alleges that it seeks to open a retail business on premises located at 717 Berlin Turnpike in Berlin (premises). The proposed business would sell "lingerie, *716 club wear, women's shoes, lotions, oils, greeting cards, gag gifts, as well as sexually explicit DVDs, books, magazines," and other products. There would be no on-site entertainment or facilities to preview merchandise.
The plaintiff also alleges that the premises are zoned for retail use and that its present building, with existing parking, constitutes a valid nonconforming use. The plaintiff further alleges that § 14-261 of the ordinance requires that all sexually oriented businesses obtain a license issued by the town manager, as the licensing authority, prior to commencing business. The plaintiff claims that the town manager has made public remarks in which he stated that he has determined that the plaintiff's proposed business constitutes a "sexually oriented business," which, under the ordinance, requires a license.[1]
In addition, the plaintiff alleges that the § 14-291 of the ordinance provides for locational restrictions, including a 250 foot setback from residentially zoned property, which are not included with the town's zoning regulations. The plaintiff asserts that its proposed business location is located within 250 feet of a residential zone and, therefore, is ineligible to be licensed due to that locational restriction.[2]
In July, 2006, the plaintiff applied for a zoning certificate seeking to open an adult bookstore at the premises. After the town zoning enforcement officer denied the application, the plaintiff appealed to the town zoning board of appeals, which affirmed the denial. The plaintiff then appealed that denial to the Superior Court; that appeal is pending in this judicial district. See VIP of Berlin, LLC v. Berlin, Superior Court, judicial district of New Britain, Docket No. HHB CV06-4Q12398.
On March 1, 2007, the plaintiff filed its motion for summary judgment and a memorandum in support thereof, which was accompanied by an affidavit and exhibits. On April 11, 2007, the defendants filed their objection to the plaintiff's motion and their motion for summary judgment, which was accompanied by a memorandum of law, affidavits and exhibits. In their motion, the defendants seek a judgment upholding the validity of § 14-291 of the ordinance. The plaintiff then filed its memorandum of law in opposition to the *717 defendants' cross motion, with exhibits, on May 1, 2007.

II

STANDARD OF REVIEW
"To succeed on a motion for summary judgment, [t]he movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence viewed in the light most favor-able to the nonmovant, the trier of fact could not reason-ably reach any other conclusion than that embodied in the verdict as directed." (Emphasis in original; internal quotation marks omitted.) Dugan v. Mobile Medical Testing Services, Inc., 265 Conn. 791, 815, 830 A.2d 752 (2003).
"[I]n seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle[s] him to a judgment as a matter of law." (Internal quotation marks omitted.) Socha v. Bordeau, 277 Conn. 579, 585, 893 A.2d 422 (2006).

III

DISCUSSION

A

Plaintiff's Motion
The plaintiff contends that the action of the town council (council) in enacting the locational restrictions in the ordinance is an ultra vires act since it constitutes zoning, over which the commission retains exclusive authority. The defendants argue that the ordinance's locational restrictions represent a legitimate exercise of municipal police power, and that the council and the commission retain concurrent jurisdiction over the regulation of the placement of adult uses.
In 1997, the commission enacted zoning regulations that contain restrictions concerning adult uses, which are defined to include adult entertainment and cabarets, and adult minimotion picture theaters and adult motion picture theaters. Such uses are permitted only in the town's general commercial zoning district. See Berlin Zoning Regs., § XI, c. Y(3). No adult use is permitted within 1500 feet of another existing adult use. See Berlin Zoning Regs., § XI, c. Y(4)(a). Also, "[n]o adult use shall be located on a parcel of land within 250 feet of any residentially zoned land." Berlin Zoning Regs., § XI, c. Y(4)(b). In addition, "[n]o adult use shall be located on a parcel of land within 1,000 feet of any public or private school, church or place of worship." Berlin Zoning Regs., § XI, c. Y(4)(c).
The ordinance was adopted by the council in 2000. Section 14-241(2)(j) of the ordinance provides that the "[l]ocation and zoning regulations alone do not adequately protect the public health, safety and welfare and thus certain requirements with respect to the ownership, employees, facility, operation, advertising, hours of business and other aspects of the sexually oriented business are in the public interest." Section 14-241(4) of the ordinance refers to the state's grant to the town of powers, "especially the police power, to enact reasonable legislation and measures to regulate and supervise sexually oriented *718 businesses in order to protect the public health, safety and welfare."
Section 14-291 of the ordinance lists several locational restrictions, including subsection (c), which provides that "[n]o sexually oriented business shall be permitted on a site that is less than 250 feet from any residentially zoned land as defined in the town zoning regulations."[3] It is undisputed that the premises are within 250 feet of a residential zone. Sections 14-261 through 14-265 of the ordinance provide for an application process by which the town manager is authorized to issue a license to an applicant.
This matter presents a question of statutory interpretation. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § l-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) AvalonBay Communities, Inc. v. Zoning Commission, 280 Conn. 405, 413, 908 A.2d 1033 (2006).
"A court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance." (Internal quotation marks omitted.) Pelliccione v. Planning & Zoning Commission, 64 Conn.App. 320, 335, 780 A.2d 185, cert. denied, 258 Conn. 915, 782 A.2d 1245 (2001).
An ordinance is presumed to be valid and "it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt." (Internal quotation marks omitted.) Blue Sky Bar, Inc. v. Stratford, 203 Conn. 14, 23, 523 A.2d 467 (1987). In the present case, the plaintiff has the burden of proving that the ordinance is invalid. See Pollio v. Planning Commission, 232 Conn. 44, 49, 652 A.2d 1026 (1995).
"In determining whether the municipality had the authority to adopt [an] ordinance . . . we do not search for a statutory *719 prohibition against such an enactment; rather, we must search for statutory authority for the enactment." (Internal quotation marks omitted.) Norwich v. Housing Authority, 216 Conn. 112, 123, 579 A.2d 50 (1990).
The plaintiff acknowledges that the town, through the council, may exercise its police powers to license a sexually oriented business. The plaintiff contests the power of the council to utilize locational restrictions as part of an overall licensing procedure.
The authority to engage in zoning is drawn from "the police power, which is the source of all zoning authority." DeMaria v. Planning & Zoning Commission, 159 Conn. 534, 541, 271 A.2d 105 (1970). "[Z]oning may be defined as a general plan to control and direct the use and development of property in a municipality or a large part of it by dividing' it into districts according to the present and potential use of the properties." State ex rel. Spiros v. Payne, 131 Conn. 647, 652, 41 A.2d 908 (1945).
"Municipalities in Connecticut may exercise zoning power either by adopting the provisions of chapter 124 of the General Statutes . . . or by enacting a municipal charter authorized by a special act of the legislature. . . . In either case, the power of the local zoning authority to adopt regulations is limited by the terms of the statute or special act." (Internal quotation marks omitted.) Campion v. Board of Aldermen, 278 Conn. 500, 510-11, 899 A.2d 542 (2006).
Thus, a municipality may adopt the provisions of chapter 124 of the General Statutes and, through a zoning commission, exercise the powers granted thereunder. See General Statutes § 8-1(a). A municipality's zoning commission acts independently of the local legislative body. See General Statutes § 8-1 et seq.; Olson v. Avon, 143 Conn. 448, 454, 123 A.2d 279 (1956); T. Tondro, Connecticut Land Use Regulation (2d Ed.1992) p. 10.[4]
General Statutes § 8-2(a) provides in relevant part that "[t]he zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality . . . the location and use of buildings, structures and land for trade, industry, residence or other purposes, including water-dependent uses as defined in section 22a-93. . . ." Contrary to the plain-tiff's argument, neither § 8-2 nor General Statutes § 8-3, which concerns the establishment and changing of zoning regulations and districts, provides that a zoning commission's authorization to regulate the location and use of buildings is exclusive.
The court may not add a word to a statute that was not included by the legislature. "[T]he court may not, by construction, supply omissions in a statute or add exceptions or qualifications, merely because it opines that good reason exists for so doing. . . . This is especially so where it appears that the omission was intentional. . . . In such a situation, the remedy lies not with the court but with the General Assembly." (Internal quotation marks omitted.) Walter v. State, 63 Conn.App. 1, 8, 774 A.2d 1052, cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001), quoting Bailey v. Mars, 138 Conn. 593, 598, 87 A.2d 388 (1952); see also Builders Service Corp. v. Planning & Zoning Commission, 208 Conn. 267, 277-78, 545 A.2d 530 (1988) (adopting "an interpretation [which] does *720 not involve inserting a word that the legislature did not include but rather advancing the legislative intent by interpreting the meaning of what it did say").
There is overlap in the General Statutes between the authority of a zoning commission and the exercise of the municipal police power through the adoption of ordinances by a town's legislative body. "Many of the subjects over which the municipality is given the power to regulate by [General Statutes] § 7-148 are traditionally the subject of zoning and planning regulations as well. Section 7-148(c)(7)[A][ii], for example, authorizes towns to regulate by ordinance `the mode of using any buildings'. . . ." T. Tondro, supra, at p. 9.[5] Where the language and purpose of two statutes overlap, they are to be read in concert. See Smith v. New Haven, 258 Conn. 56, 64 n. 6, 779 A.2d 104 (2001) (discussing General Statutes §§ 13a-144 and 13a-149).
"[I]t is a well established rule of statutory construction that repeal of the provisions of a statute by implication is not favored and will not be presumed where the old and the new statutes . . . can peacefully coexist. . . . If, by any fair interpretation, we can find a reason-able field of operation for both . . . without destroying or perverting their meaning and intent, it is our duty to reconcile them and give them concurrent effect." (Internal quotation marks omitted.) Rivera v. Commissioner of Correction, 254 Conn. 214, 242, 756 A.2d 1264 (2000).
Overlapping authority was also discussed in the commentary by Professor Terry J. Tondro on Hegyi v. Plan & Zoning Commission, 14 Conn.App. 365, 370, 540 A.2d 1068 (1988), where the court found an appeal to be moot by reason of a subsequent ordinance passed by the representative town meeting, which prohibited the use for which a permit was sought from the town's plan and zoning commission. "The proper answer in Hegyi is that both the zoning regulation (the authority to grant permits for this use) and the ordinance prohibiting landing of aircraft must be given effect, since both the zoning commission and the legislative body have authority to regulate the proposed activity in the manner in which each chose to act." T. Tondro, supra, at pp. 11-12;[6] see also id., at p. 51 ("a town legislative body has its own independent authority [usually in . . . § 7-148] to regulate an activity which the zoning commission is regulating, and the statutes do not prohibit the legislative body from acting under the authority of its own regulatory program").
Similarly, in Wright v. Woodridge Lake Sewer District, 218 Conn. 144, 148-50, 588 A.2d 176 (1991), where the plaintiffs challenged a sewer ordinance as unlawful de facto zoning, the Supreme Court reversed and remanded to the trial court, in order for the trial court to consider the defendants' evidence as to whether the ordinance was a legitimate exercise of the *721 police power by the sewer authority.[7] Just as General Statutes §§ 7-246 and 7-247 authorize municipal sewer commissions to adopt regulations and to develop plans for municipal water and sewer facilities, § 7-148 authorizes municipalities to regulate the mode of using buildings.
Section 7-148(c), pertaining to regulatory and police powers concerning buildings, provides in relevant part: "Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the Constitution and general statutes . . . (7) Regulatory and police powers. (A) Buildings . . . (ii) Regulate the mode of using any buildings when such regulations seem expedient for the purpose of promoting the safety, health, morals and general welfare of the inhabitants of the municipality. . . ." The overlap between the § 8-2(a) regulation of "the location and use of buildings," and the § 7-148(c)(7)(A)(ii) "[r]egulat[ion][of] the mode of using any buildings," is evident.
The overlap between the two statutes must be presumed to have been intended by the legislature. "[T]he General Assembly is always presumed to know all the existing statutes and the effect that its action or nonaction will have upon any one of them. . . . This principle is in accord with the directive of § l-2z to consider a statute in relationship to other statutes on the same subject matter in order to determine whether its meaning is plain and unambiguous." (Internal quotation marks omitted.) AvalonBay Communities, Inc. v. Zoning Commission, supra, 280 Conn. at 417, 908 A.2d 1033.
For example, § 7-148(c)(7)(A)(iv) authorizes a municipality, in exercising its police powers, to "[r]egulate and provide for the licensing of parked trailers when located off the public highways, and trailer parks or mobile manufactured home parks, except as otherwise provided by special act and except where there exists a local zoning commission so empowered. . . ." (Emphasis added.)[8]
Similarly, the exercise of the municipal police power does not include the regulation of sand and gravel operations where a local zoning commission exists. Section 7-148(c)(8)(C) provides that "[e]xcept where there exists a local zoning commission, [a municipality shall have the power to] regulate the filling of, or removal of, soil, loam, sand or gravel from land not in public use in the whole, or in specified districts of, the municipality, and provide for the reestablishment of ground level and protection of the area by suitable cover. . . ." (Emphasis added.)
"[S]ome of these . . . § 7-148 powers are exercisable only if there is no zoning commission in the town (e.g., trailer parks, sand and gravel operations), implying that *722 the other powers just listed are exercisable by ordinance even though a zoning commission exists that is exercising those same powers." (Emphasis in original.) T. Tondro, supra, at p. 9.
In § 7-148(c)(7)(A)(ii), pertaining to regulation of the "mode of using any buildings," the legislature did not exclude the exercise of the municipal police power where a local zoning commission exists. It is presumed, therefore, that the legislature did not intend to preclude the exercise of this police power through ordinance by municipalities that have a local zoning commission. See Colangelo v. Heckelman, 279 Conn. 177, 191, 900 A.2d 1266 (2006) ("citing rule of statutory construction, expressio unius est exclusio alterius, or `the expression of one thing is the exclusion of another'"). If the legislature had intended to preclude such an exercise of police power, "it knew how to enact such limitations." AvalonBay Communities, Inc. v. Zoning Commission, supra, 280 Conn. at 417-18, 908 A.2d 1033.
The plaintiff also argues, in its memorandum in opposition to the defendants' cross motion, citing a dictionary definition for the term "buildings," that § 7-148(c)(7)(A)(ii) does not relate to locational requirements for land use. When a statute or regulation does not expressly define a term, construction of it is to "[comport] with the plain and ordinary meaning of the word as it is used in common parlance." Peabody N.E., Inc. v. Dept. of Transportation, 250 Conn. 105, 122-23, 735 A.2d 782 (1999). In the absence of a definition for a term, the Supreme Court has looked to the dictionary definition, as set forth in Webster's Third New International Dictionary (1993), to ascertain its meaning. See Peabody N.E., Inc. v. Dept. of Transportation, supra, at 122, 735 A.2d 782.
Webster's Third New International Dictionary, p. 292, in the most closely related context, defines "building" as meaning "a constructed edifice designed to stand more or less permanently, covering a space of land, usu[ally] covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure. . . ." In the most closely related context, Webster's Third New International Dictionary, p. 1451, defines "mode" to mean "a manner of doing something or of performing a particular function or activity. . . ." Clearly, by definition, the "mode of using any buildings," as set forth in § 7-148(c)(7)(A)(ii), may pertain to the manner in which a structure is used on the particular "space of land" where it is located.
Overlapping authority is anticipated in General Statutes § 8-13, which provides in relevant part: "If the provisions of any other statute, bylaw, ordinance or regulation . . . impose other and higher standards than are required by the regulations made under authority of the provisions of this chapter, the provisions of such statute, bylaw, ordinance or regulation shall govern." Thus, the legislature stated that other laws, including municipal ordinances, may overlap with and provide other and higher standards in an area dealt with by a zoning regulation. "[I]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) Board of Education v. State Board of Education, 278 Conn. 326, 335, 898 A.2d 170 (2006). While, as the plaintiff argues, § 8-13 must be read to include only ordinances that were legally adopted, the plaintiffs interpretation would read into the authorization provided to the municipality *723 in § 7-148(c)(7)(A)(ii), to "[r]egulate the mode of using any buildings," a limitation in scope that was not provided in the words adopted therein.
Contrary to the plaintiff's argument in its memorandum in support of its motion, the provisions of § 7-148 concerning municipal police powers are not inconsistent with the specific provisions of §§ 8-2 and 8-3. The court is unpersuaded by the plaintiff's reference to the principle of statutory construction that specific terms covering a subject matter in one statute will prevail over general language in the same or another statute that might otherwise prove controlling. The § 8-2(a) regulation of "the location and use of buildings," and the § 7-148(c)(7)(A)(ii) "[r]egulat[ion][of] the mode of using any buildings," are similar to and not inconsistent with one another. "[T]he axiom that a specific statutory provision will ordinarily trump a general statutory provision cannot, by itself, displace the process of thoughtful and complete statutory interpretation. . . . [T]hat axiom does not appropriately apply in the present case." (Citation omitted.) Commission on Human Rights & Opportunities v. Board of Education, 270 Conn. 665, 723, 855 A.2d 212 (2004).
The plaintiff also argues that § 7-148(b), which provides that powers granted to any municipality under the General Statutes or by charter or special act, "unless the charter or special act provides to the contrary," shall be exercised by ordinance, limits the town's authority to act under § 7-148 here. Section 3-8(b) of the town charter provides that "[t]he legislative power of the town shall be vested exclusively in the Council except as otherwise provided specifically in this Charter." Section 8-8-6 of the town charter provides in relevant part that "[e]xcept as otherwise set forth in this Chapter, the Planning and Zoning Commission shall be governed by the provisions of the Connecticut General Statutes. All provisions of Chapters 124 and 126 of the Connecticut General Statutes, not inconsistent with the provisions of this Chapter, are hereby adopted. . . ." The town charter does not preclude the council from utilizing the police power to enact ordinances, as authorized in § 7-148(c)(7). See Food, Beverage & Express Drivers Local Union No. 145 v. Shelton, 147 Conn. 401, 405, 161 A.2d 587 (1960).
The challenged locational restriction does not represent the action of the town's legislative body to amend or repeal the commission's zoning regulations. See Olson v. Avon, supra, 143 Conn. at 454, 123 A.2d 279;[9]State ex tel. Bezzini v. Hines, 133 Conn. 592, 596, 53 A.2d 299 (1947); Poulos v. Caparrelli, 25 Conn.Supp. 370, 372, 205 A.2d 382 (1964). In AvalonBay Communities, Inc. v. Zoning Commission, supra, 280 Conn. at 420, 908 A.2d 1033, the Supreme Court stated that *724 "these cases . . . involved the municipality's participation in the making, amending or repealing of regulations by a municipal commission." In commenting on the dissent's view that the town council's intervention was essentially the same as if it had legislatively overridden the local agencies' decision; id., at 429, 908 A.2d 1033; the majority noted that "Olson and State ex rel. Bezzini cannot be read this broadly. In those cases, the municipal legislative bodies sought to override directly certain regulations adopted by the zoning commissions to which they had delegated the authority to make such regulations. . . . In the present case, the town does not seek to override any decision by the zoning commission or the wetlands agency. . . ." (Citations omitted.) Id., at 421 n. 17, 908 A.2d 1033. In the present case, likewise, the ordinance leaves in place the commission's zoning regulations concerning adult uses. See Berlin Zoning Regs., § XI, c. Y(3).
As to zoning regulations, "it was the intent of the General Assembly to vest in a zoning commission the sole authority to make, amend or repeal regulations. . . . In the present case the town's [action] will not have any impact upon the making, amending or repealing of any zoning commission . . . regulations." (Citation omitted; internal quotation marks omitted.) AvdlonBay Communities, Inc. v. Zoning Commission, supra, 280 Conn. at 420, 908 A.2d 1033. Similarly unpersuasive, for the same reasons, are the plaintiff's references to Shippee v. Zoning Board of Appeals, 39 Conn.Supp. 436, 440, 466 A.2d 328 (1983) (finding that regulation did not constitute impermissible delegation of legislative authority to zoning board of appeals).
For the same reasons, the court is unpersuaded by the plaintiffs reliance on O'Meara v. Norwich, 167 Conn. 579, 356 A.2d 906 (1975). In O'Meara, the city charter contained a provision by which a special election could be held to overrule an ordinance. Id., at 580, 356 A.2d 906. The Supreme Court stated, "[t]he determination that the charter . . . does not give a right to amend or repeal to the municipality under the charter provision for overrule of ordinances enacted by the council acting as a zoning commission is dispositive of this appeal." Id., at 584, 356 A.2d 906. Thus, what was not authorized was an overruling of an action of the council acting as a zoning commission, as opposed to "acting in its general legislative capacity and promulgating independent police regulations. . . ." Id., at 583, 356 A.2d 906. In the present case, the facts do not concern the council's overruling of an action by the commission. As noted previously, § 14-291(1) of the ordinance incorporates § XI, c. Y, of the zoning regulations by reference.[10]
The challenged locational restrictions in the ordinance do not represent an unauthorized exercise of zoning authority. In ascertaining if an ordinance is really a part of the general plan of zoning, the court looks to "the nature and purpose of the ordinance, its relation to the general *725 plan of zoning in the city, its provisions and the terms it uses." State ex rel. Spins v. Payne, supra, 131 Conn. at 652, 41 A.2d 908. In the present case, the ordinance's locational restrictions do not divide the town into districts. See id. Instead, as noted, the purpose of the ordinance is to regulate sexually oriented businesses throughout the town by a licensing procedure. The ordinance "is not part of the [t]own's general plan, but is, by its nature and purpose, a regulation of adult uses pursuant to its legitimate police power." Gold Diggers, LLC v. Berlin, 469 F. Sup.2d 43, 66 (D.Conn.2007).[11]
The plaintiff's reliance on Cristofaro v. Burlington, 217 Conn. 103, 584 A.2d 1168 (1991), is misplaced. In that case, the Supreme Court concluded that a planning commission exceeded its statutory mandate under General Statutes § 8-25 "by enacting a regulation that effectively amends or alters an existing zoning regulation. . . ." Id., at 107, 584 A.2d 1168. In Cristofaro, the court did not address a municipal ordinance that was enacted pursuant to a town's police power under § 7-148. Similarly, other cases cited by the plaintiff in support of its argument that the ordinance's locational restrictions amount to de facto zoning do not address the authority of a town's legislative body, by ordinance, to utilize the police power to regulate the use of buildings. See Harris v. Zoning Commission, 259 Conn. 402, 425, 788 A.2d 1239 (2002); Builders Service Corp. v. Planning & Zoning Commission, supra, 208 Conn. at 267, 545 A.2d 530; WATR, Inc. v. Zoning Board of Appeals, 158 Conn. 196, 199, 257 A.2d 818 (1969); Karp v. Zoning Board, 156 Conn. 287, 297-98, 240 A.2d 845 (1968); Finch v. Montanari. 143 Conn. 542, 545, 124 A.2d 214 (1956).
"[T]he provision is legitimate in accordance with the interpretation of Connecticut law that municipalities and planning and zoning commissions retain concurrent jurisdiction over regulation of certain activities such as adult uses." Gold Diggers, LLC v. Berlin, supra, 469 F. Sup.2d at 66; id. (construing same ordinance's locational restrictions).
Under these circumstances, where the meaning of the previously cited provisions in the town charter, the ordinances, and the General Statutes is plain and unambiguous, there is no need for the court to consider extratextual evidence. See AvalonBay Communities, Inc. v. Zoning Commission, supra, 280 Conn. at 413, 419, 908 A.2d 1033.[12]
Also, no absurd or unworkable result flows from this conclusion. See General Statutes § 1-2z. The challenged locational restriction in the ordinance is "an exercise of the police power conferred upon the town by statute. There is no doubt that *726 the town has a right to regulate a business pursuant to its police power, in the interest of protecting the public safety or the welfare of its inhabitants." Blue Sky Bar, Inc. v. Stratford, supra, 203 Conn. at 22, 523 A.2d 467, citing General Statutes § 7-148.
The plaintiff has not shown that the council's adoption of the ordinance's locational restrictions was an ultra vires act. The plaintiff has not sustained its burden to show, beyond a reasonable doubt, that the challenged locational restriction in the ordinance is invalid. See Blue Sky Bar, Inc. v. Stratford, supra, 203 Conn. at 23, 523 A.2d 467.

B

Defendants' Motion
As discussed previously, the defendants have shown, as a matter of law, that they are entitled to judgment as to the plaintiffs amended complaint. While, in their motion, the defendants request declaratory relief, they have not complied with Practice Book § 17-56 concerning the procedure for a declaratory judgment, since they have not filed a counterclaim seeking such relief.
Practice Book § 17-56(a)(1) provides that the form and practice prescribed for civil actions shall be followed in actions seeking a declaratory judgment. Practice Book § 17-56(a)(2) requires a prayer for relief stating "with precision the declaratory judgment desired. . . ." Practice Book § 17-56(a)(5) provides that "[t]he defendant in any appropriate action may seek a declaratory judgment by a counterclaim." Practice Book § 17-56(b) requires that "[a]ll persons who have an interest in the subject matter of the requested declaratory judgment that is direct, immediate and adverse" be made parties to the action or be given reasonable notice thereof. Under these circumstances, in the absence of compliance with Practice Book § 17-56, the court may not render judgment upholding the validity of § 14-291 of the ordinance, as requested by the defendants in their motion.

IV

CONCLUSION
For the foregoing reasons, the plaintiffs motion for summary judgment is denied and the defendant's motion for summary judgment is granted in part and denied in part. Judgment may enter against the plaintiff and for the defendants on the plaintiffs amended com-plaint. The defendants' request for a declaratory judgment is denied. It is so ordered.
NOTES
[*] Affirmed. VIP of Berlin, LLC v. Berlin, 287 Conn. 142, 946 A.2d 1246(2008).
[1] Section 14-242 of the ordinance provides in relevant part; "Sexually oriented business means: (1) An adult arcade, adult oriented store, adult cabaret, adult minimotion picture theater, adult motion picture theatre, adult theatre, escort agency, massage parlor, nude model studio or sexual encounter establishment;

"(2) Any premises to which the public, patrons, or members are invited or admitted and wherein an entertainer provides adult entertainment, or which premises are so physically arranged as to provide booths, cubicles, studios, rooms, compartments or stalls separate from the common areas of the premises for the purpose of viewing adult-oriented motion pictures or wherein an entertainer provides adult entertainment, when such adult entertainment is held, conducted, operated or maintained for profit, direct or indirect; or
"(3) Any adult entertainment studio or any premises that are physically arranged and used as such, whether advertised or represented as an adult entertainment studio, rap studio, exotic dance studio, encounter studio, sensitivity studio, modeling studio or any other term of like import. . . ."
[2] In the amended complaint, the plaintiff also alleges that the ordinance violates its rights under the first and fourteenth amendments to the United States constitution. It states therein, however, that it has previously commenced an action in the United States District Court for the District of Connecticut in which it intends to litigate these claims. Accordingly, the court does not address the constitutional issues. See England v. Louisiana Board of Medical Examiners, 375 U.S. 411, 421, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).
[3] Section 14-291 of the ordinance provides:

"(a) No sexually oriented business shall be permitted on a site that is less than 1,500 feet from any other site containing a sexually oriented business.
"(b) No sexually oriented business shall be permitted on a site that is less than 1,000 feet from any site containing a church, school, public building, public park or recreation area.
"(c) No sexually oriented business shall be permitted on a site that is less than 250 feet from any residentially zoned land as defined in the town zoning regulations.
"(d) No sexually oriented business shall be permitted within the same building, structure or portion thereof that is used for residential purposes or that contains another sexually oriented business.
"(e) All distances contained in this section shall be measured by taking the nearest straight line between the respective lot boundaries of each site.
"(f) Section XI, chapter Y, of the town zoning regulations, as may be amended from time to time, are hereby incorporated by reference as a part of this article, and any violation of such regulations shall be deemed a violation of this article."
[4] Our Supreme Court has cited this treatise as a reference. See Campion v. Board of Aldermen, supra, 278 Conn. at 511, 899 A.2d 542.
[5] A rational basis must support a regulation that is adopted pursuant to a municipality's police power. See Beacon Falls v. Posick, 212 Conn. 570, 584, 563 A.2d 285 (1989).
[6] Subsequent to Hegyi v. Plan & Zoning Commission, supra, 14 Conn.App. at 365, 540 A.2d 1068, No. 89-311 of the 1989 Public Acts enacted General Statutes § 8-2h, which provides that an application that is in conformance with applicable zoning regulations as of the time of filing shall not be required to comply with nor shall it be disapproved because it does not comply with any change in the zoning regulations or boundaries of zoning districts that took effect after the application was filed. Professor Tondro's commentary concerning Hegyi appears in the 1992 edition of his treatise, after the enactment of § 8-2h.
[7] This court is unpersuaded by the plaintiff's reference to the trial court decision, after remand, in Wright v. Woodridge Lake Sewer District, Superior Court, judicial district of Litchfield, Docket No. 0043501, 1992 WL 4521 (January 7, 1992). There, the trial court invalidated the ordinance as ultra vires where the defendant sewer district had not formed a zoning commission, and where the ordinance was found not to be a proper exercise of the police power, since it was not rationally adapted to promote the public health or welfare. See id.
[8] The defendants' reliance on Karen v. East Haddam, 146 Conn. 720, 155 A.2d 921 (1959), is unpersuasive. The ordinance at issue in that case concerned trailers and mobile home parks, which may be regulated as provided in § 7-148(c)(7)(A)("iv). Id., at 722, 155 A.2d 921. The court stated that "[t]he statute . . . clearly contemplated that the powers conferred be exercised in lieu of similar powers exercised by zoning authorities in towns where there are such authorities." (Citation omitted.) Id., at 729, 155 A.2d 921. In the present case, the town has a zoning authority, the commission.
[9] As noted in T. Tondro, supra, at p. 51, "Olson is not inconsistent with the view that the statutes taken as a whole contemplate multiple independent although overlapping reviews. Instead of reading Olson broadly to conclude that there is something called the zoning power which can be exercised only by the zoning commission, it can be read to mean simply that zoning commission decisions cannot be appealed to the town meeting, because the statutes give the power to review the decision of an administrative agency to the courts." This comment by the author relates to the "line of reasoning" previously discussed in his treatise; id., at p. 10; which also cites Olson, and which is cited by the plaintiff in its supporting memorandum, but misquoted by the plaintiff, that "the classic zoning functionsthe location of particular uses and their bulk and heightwould be beyond the reach of a town ordinance unless the statute delegating the ordinance power to municipalities, § 7-148, specifically permitted the town's legislative body to exercise a particular control by ordinance."
[10] Similarly unpersuasive is the plaintiff's reference to Bristol Resource Recovery Facility Operating Committee v. Bristol, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket. No. CV92-0453461, 1995 WL 410806 (June 30, 1995) (initiative authority given to Bristol electorate found invalid since it purported to regulate zoning matter). Also, the plaintiff's citation to Gold Diggers, LLC v. Berlin, Superior Court, judicial district of New Britain, Docket No. CV06-4010241S, 2007 WL 430658 (January 24, 2007), is inapposite. In that case, on a motion to dismiss, the court determined only that it had subject matter jurisdiction since an appeal to the zoning board of appeals was an inadequate administrative remedy. See id.
[11] The plaintiff's argument that § 14-292(b) of the ordinance, concerning existing businesses, is contrary to § 8-2(a), which provides that zoning "regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations," is not. well-founded. First, as discussed previously, the locational restrictions in the ordinance do not represent an unauthorized exercise of zoning authority. Second, § 14-292(b) of the ordinance permits a nonconforming sexually oriented business to continue, unless its license has expired or has been revoked.
[12] The court notes that the plaintiff has provided excerpts from a deposition in order to explain the purpose of the ordinance, which were contained in an exhibit to the plaintiff's memorandum in opposition to the defendants' cross motion for summary judgment. Also, since they are not the subject of the plaintiffs complaint, the provisions of other towns' ordinances concerning location restrictions like those contained in the ordinance here, which are cited by the defendants, need not be considered by the court.